SHERMAN *v.* KORFF.

1. AUTOMOBILES — PASSENGERS — IMPUTED NEGLIGENCE — ABSTEN-
TION FROM INTERFERENCE WITH DRIVER — CO-OWNERSHIP.

Co-ownership of an automobile between driver and passenger, as
husband and wife, driven by wife, does not provide a basis
for control of the car by the husband so as to permit the
imputation of her negligence to him when the car is involved
in a collision in which he suffers injuries due in part to the
negligence of the defendant driver of another car, since a
passenger's abstention from interference with the driver of
an automobile is regarded as prudent conduct, especially in
moving traffic.

2. PRINCIPAL AND AGENT—SCOPE OF AGENCY.

The fact that a person is the agent of a principal for one
purpose does not make the agency one for all purposes.

3. AUTOMOBILES—JOINT ADVENTURES—IMPUTED NEGLIGENCE—HUS-
BAND AND WIFE.

Fishing expedition whereby husband and his mother were to
do the fishing and he was injured in collision with another car
while his wife was driving car owned by him and his wife,
*held*, not a common enterprise, whereby negligence of wife,
the bailee, should be imputed to husband, the bailor, so as to
preclude recovery from negligent operator of other car in-
volved, it appearing that the wife was not a fisherman.

4. SAME—HUSBAND AND WIFE—PRINCIPAL AND AGENT—IMPUTED
NEGLIGENCE.

The marriage relationship does not, as a matter of law, constitute
one spouse driving an automobile the agent or servant of
the other present therein as a guest passenger, and conse-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 5A Am Jur, Automobiles and Highway Traffic § 817.
[2] 2 Am Jur, Agency § 86 *et seq.*
[3] 5A Am Jur, Automobiles and Highway Traffic § 827.
[5] 3 Am Jur, Appeal and Error § 1210 *et seq.*

quently in such cases the negligence of the one driving is not imputable to the other.

5. APPEAL AND ERROR—REMAND—STIPULATIONS—DAMAGES.

Judgment of no cause for action is set aside and cause remanded to trial court for entry of judgment in sum stipulated by the parties, where determination of trial court that negligence of plaintiff's wife who was driving the car when involved in a collision with a car driven by negligent defendant should be imputed to plaintiff is reversed.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Alcona; Dehnke (Herman), J. Submitted April 9, 1958. (Docket No. 28, Calendar No. 47,423.) Decided July 15, 1958.

Case by Floyd Sherman against Theodore Korff and Manford Korff for personal injuries sustained in automobile collision. Cross declaration by defendants. Similar case by plaintiff's wife. Cases consolidated for trial, with parties stipulating in respect to applicability of certain matters in each. After verdict on 2 special questions which disposed of wife's case, plaintiff moved for judgment. Motion denied and judgment entered for defendants. Plaintiff appeals. Reversed and remanded.

*Smith & Brooker* and *Milton E. Higgs,* for plaintiff.

*Heilman & Purcell,* for defendants.

DETHMERS, C. J. (*dissenting*). In a skillfully written opinion the trial judge stated the case, in part, as follows:

"This 'and a companion case in which plaintiff's wife was the plaintiff, arise out of a collision of 2 automobiles in Curtis township in this county on July 17, 1954. Two automobiles, one driven by de-

fendant, Theodore Korff, and owned by his father, the other owned by plaintiff and his wife jointly and being driven at the time by the wife, "met" at the top of a hill and collided. Each party claims to have been operating his car on his own half of the highway, and that the accident occurred because the other party was operating his car partly on his wrong side. The case was tried to a jury and submitted on special questions, the answers to which were to the effect that neither party had sustained the burden of proving by a preponderance of the evidence that his car was on its own half of the road at the time of the collision.

"Counsel had previously agreed that if negative answers were returned to these questions, they would in effect amount to a finding that neither driver had shown himself to be free of contributory negligence; and further, that they should be construed as an affirmative finding that each of the drivers was guilty of negligence in not keeping his car entirely on his own half of the road.

"The negative answers returned under these circumstances required judgments of no cause of action to be entered in the suit of Mrs. Sherman against defendants, and in the cross action of defendants against plaintiffs.

"The issue reserved for determination by the court in this, the husband's, case is whether or not the contributory negligence of the wife, joint owner, driving plaintiff's car at the time, is legally imputable to the husband, so as to bar his right to recover. He was the most seriously injured of the 4 people riding in the 2 automobiles, and it was stipulated that if he is entitled to recover at all, the judgment will be for $4,500.

"It is the position of plaintiff that he was, in effect, merely a guest passenger riding with his wife, and that therefore her contributory negligence is not chargeable to him, under *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697). * * *

"Defendants on the other hand contend that under the undisputed testimony, that given by plaintiff and his wife, she was operating the automobile either for his special purpose, or that they were at the time engaged in a joint enterprise or adventure; and that in either case his driver's contributory negligence is legally imputed to him and bars him from recovery.
* * *

"As indicated, defendants point to plaintiff's own testimony as establishing that plaintiff and his wife were engaged in a joint enterprise, or that she was driving the car to enable him to accomplish *his* purpose.

"Put in narrative form, plaintiff's testimony on this angle was:

" 'We happened to be in Alcona county that day because we were going fishing. By "we" I mean my wife, my mother, and myself. Our destination was the Au Sable river. We had come from my mother's farm in Iosco county. My wife and I had arrived there the night before. The car was owned by myself and my wife—our names are both on the title. When we left the farm, my wife was driving, I was seated on the right of the front seat, my mother was in the rear seat. I did not, as a passenger, give her any directions or instructions as she drove. Once a week we made it a habit—or maybe twice a week—to take my mother fishing. She's a very ardent fisherman. And I like to fish too, absolutely, yes. My wife doesn't do very much fishing. I and my mother were the ones that really went fishing. You might call this a trip for our mutual pleasure and recreation. My wife always drives on our days off—as a rule, almost completely all. I had no objection to her driving the car—I was very much enthused over it. I didn't ask her to drive. It was just taken for granted that she does drive, as a rule, and if I want to drive I just get in the seat and drive. That is something of long standing. It's a means of relaxation for me—I drive for a living. It's always agreeable to me that she does drive. When she was driving on

this day we were going out for mutual recreation and pleasure for all three. Before we left my mother's home we knew where we were going. We did not definitely have a particular fishing spot picked out, but almost; it depended upon the water in the stream. We were going to have a look at the stream and pick out our spot from there.' "

It will be noted that the jury did not return a general verdict for either party, but only answers to 2 special questions to the effect that neither automobile was completely on its own side of the road at the time of the collision. It will be noted further that it was stipulated between the parties that upon the return of such answer to the 2 special questions it would be left to the trial judge to determine whether the contributory negligence of plaintiff's wife was to be imputed to him. Accordingly, the trial court found, as a fact, that they had been engaged in a joint enterprise at the time of the accident. That finding is not against, but, on the contrary, is supported by the clear preponderance of the evidence, in which case we do not reverse it. *Schiesel* v. *Bluesavage*, 314 Mich 415; *Sullivan* v. *City of Detroit*, 316 Mich 232. On the basis of that finding, the trial court held the contributory negligence of plaintiff's wife imputable to him, barring his right to recover and, hence, found for defendant, ordering entry of judgment of no cause for action. Plaintiff appeals.

The mentioned finding of the trial judge finds support in *Hopkins* v. *Golden*, 281 Mich 389; and *Johnson* v. *Fischer*, 292 Mich 78, in which persons travelling together in 1 automobile on a noncommercial fishing trip were held, as a matter of law, to be engaged in a joint venture for pleasure and recreation with the hope of prospective reward in the acquiring of fish and, in consequence, barred from recovery because the contributory negligence of their coventurer-driver was imputable to them.

In *Hanser* v. *Youngs,* 212 Mich 508, the plaintiff, together with the owner of a truck and its driver, went in the truck to get their winter's supply of potatoes. On the return trip plaintiff was injured, sued the operator of another automobile which struck him, and was held barred from recovery by the contributory negligence of the truck driver because they were engaged in a joint or common enterprise, namely, that of purchasing and bringing home their potatoes.

In *Farthing* v. *Hepinstall,* 243 Mich 380, *Frisorger* v. *Shepse,* 251 Mich 121; and *Hopkins* v. *Golden, supra,* it was held that the equal right of control of a vehicle, as distinguished from actual physical control, was the badge of a joint venture.

In 2 Restatement, Torts, ch 17, § 491, comment *f,* it is said:

"The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein a joint enterprise irrespective of whether the journey is or is not made for a common business purpose. This is so not only when the joint possession arises from a joint hiring but also when it results from a joint ownership."

In *Fox* v. *Lavender,* 89 Utah 115, 138, 139 (56 P2d 1049, 109 ALR 105), the Utah court said:

"The actual joint possession from which joint control is inferred is not merely common presence in a car. It arises from a joint hiring or a joint ownership. * * * Joint owners both present in a car presumably have joint possession of the car. From such joint possession, the right of joint control follows and from this right of joint control * * * an agency arises which makes the nondriving joint owner present in the car responsible for the negligence of the driving joint owner. * * *

"To sum up, when a sole owner is driving it is presumed, without more, that he is in control and has the complete right of control; when the sole owner is present in the car and another is driving, it is presumed, without more being shown, that the sole owner has the right of control, and that the driver is driving for him, that is, as his agent. If 2 or more joint owners are in the car, they will be presumed, without more shown, to have joint right of control and therefore the driver will be presumed to be driving for himself and as the agent of the other present joint owners. When one is driving on a true joint venture for himself and another or others, then such other or others will be liable regardless of whether the person driving is sole or joint owner or not an owner at all."

To the same effect are: *Ross* v. *Burgan,* 163 Ohio St 211 (126 NE2d 592, 50 ALR2d 1275); *Bloom* v. *Leech,* 120 Ohio St 239 (166 NE 137); *Perrin* v. *Wells* (Mo App), 22 SW2d 863; *Coleman* v. *Bent,* 100 Conn 527 (124 A 224); *Archer* v. *Chicago, M., & St. P. R. Co.,* 215 Wis 509 (255 NW 67, 95 ALR 851).

In the instant case plaintiff and wife were engaged in the common venture of going and taking his mother on a fishing trip. Even though he did not have actual physical control of their automobile, the fact of their joint ownership, so far from standing as a refutation of his right of control, actually establishes it and serves as an additional evidence of the existence of the joint enterprise.

Judgment should be affirmed, with costs to defendants.

CARR and KELLY, JJ., concurred with DETHMERS, C. J.

SMITH, J. Here we see the erroneous imputed-negligence doctrine of *Thorogood* v. *Bryan* (1849), 8

CB 115 (137 Eng Rep 452), once thought laid to rest in *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697), exhumed, clothed in modern dress, and reinstated as controlling authority. It was a pernicious doctrine in its lifetime. In its reincarnation it is no more appealing. It employs a discredited fiction to deny a just result.

Our case involves a motor-vehicle passenger who was injured through the negligence of others. He, himself, is free from fault. Yet his action against one of those responsible for his injuries is said to be barred. Why? Because we impute to him the contributory negligence of his driver.

This conclusion results, apparently, from the holding that they were joint adventurers. If we follow our Brother's opinion correctly, a common enterprise existed between husband and wife. In addition, there was a common ownership of the car, giving rise to "the badge of a joint venture," namely, the equal right of control. From these considerations it is thought to follow that the contributory negligence of the driver should be imputed to the spouse passenger, thereby depriving him of recovery against a negligent third person, though the injured spouse himself was without personal fault. To paraphrase, the husband's teeth have been set on edge because his wife ate sour grapes. Is this law or is it magic?

In the *Thorogood Case,* also, the negligence of the driver was imputed to the passenger. They were "identified" as one. Among other reasons for the doctrine was that of alleged control. The court held, in part,* "On the part of the plaintiff, it is suggested that a passenger in a public conveyance has no control over the driver. But I think that cannot with propriety be said. He selects the conveyance. * * * If he is dissatisfied with the mode of con-

---

* The court combined the *Thorogood Case* with *Catlin* v. *Hills,* 8 CB 123, 132 (137 Eng Rep 455, 458).—Reporter.

veyance, he is not obliged to avail himself of it." All of this talk of control of the bus driver by one of his passengers was, of course, sheer fiction. Courts were not long bemused. Recognition that there was a complete lack of control, as a practical matter, was instrumental in the repudiation of the *Thorogood Case*. See *New York, L. E. & W. R. Co.* v. *Steinbrenner*, 47 NJL 161 (54 Am Rep 126); *Little* v. *Hackett*, 116 US 366 (6 S Ct 391, 29 L ed 652). Yet we must still contend with the doctrine. It has survived, in Huxley's words, "long after its brains have been knocked out." Again, in the case before us, we are told there is "control" of the driver by the passenger in the motor vehicle.

But is, in truth, the case before us significantly different from the bus case on this so-called badge of the joint venture, the right to control? Divorcing ourselves, as we must if we are to do justice, from the baleful influence of a pernicious fiction, what control or right of control has a passenger, even though he may be a co-owner, as the car speeds down the highway, driven by the other co-owner? Any attempted exercise of the right of control by wresting the wheel from the driver would be foolhardy. Equally menacing to the driver's efficient operation of the machine are raucous reproaches, strident denunciations, or even persistent unctuous admonitions from the back seat. "Generally," it was well put in a Federal case, "it is the duty of the passenger to sit still and say nothing. It is his duty, because any other course is fraught with danger. Interference, by laying hold of an operating lever, or by exclamation, or even by direction or inquiry, is generally to be deprecated, in the long run, the greater safety lies in letting the driver alone." *Southern Pacific Co.* v. *Wright* [CCA], 248 Fed 261, 264. Mr. Justice Finch, of the New York court of appeals (*Hoag* v. *N. Y. C. & H. R. R. Co.*, 111 NY 199, 203

[18 NE 648]), likewise pointed out the dangers attendant upon an attempted exercise of control by one spouse as the other drove a team of horses. "She [the passenger] could not," he held, "be required to seize the reins or interfere with the driver. That is almost always dangerous and imprudent." It requires no profound acumen to realize that the abstention from interference regarded as prudent conduct in the days of the horse and cart is even more necessary today, regardless of who has the legal title.

" 'Parties having equal legal title to a motor vehicle cannot be permitted to contend for the wheel in moving traffic and hence the imputation of negligence to the joint owner present upon the theory of equal legal right to domination or control is untenable.' " (*Painter* v. *Lingon,* 193 Va 840, 848 (71 SE2d 355), quoting *Jenks* v. *Veeder Contracting Co.,* 177 Misc 240 [30 NYS2d 278, 281], aff'd on this point, 264 App Div 979 [37 NYS2d 230], 290 NY 810 [50 NE2d 231].)

The fatal defect in the *Thorogood* doctrine (lack of control) is equally obvious in the case at bar. The plain fact of the matter is that there is no "right of control" in the passenger, and it is pure fiction to assert that such exists simply because legal title to the car is in their joint names. With reference to the Illinois courts it has been said that when they find (or fail to find) a "right of control" they actually are merely expressing a result, not giving a reason. "The courts seem to first determine from the factual situation that there should or should not be an enterprise and then to appropriately label the situation as one where there was or was not a right of control. It is a result rather than a test."* The point is well

---

* "Preparing and Trying Cases in Illinois," prepared by the Illinois State Bar Association section on insurance law, vol 2, p 201.

made.  Actually there is no right to control, in the case before us, in any matter causally connected with the accident, and the imputation of negligence upon such grounds is clear error.

When we are interpreting such words as "agent" and "control," we must constantly ask, Agency for what purpose?  Control in what respect?  It is hornbook learning that because one is an agent for one purpose he is not an agent for all.  An agent to sell and convey lands has no authority to mortgage. 1 Restatement, Agency, § 67(2).  No more can we say that because joint ownership results in real control for some purposes (*e.g.,* transfer of title), there is control for all purposes (*e.g.,* steering and braking while car is being driven by another).  Authority and reason alike support the proposition that the true relationship between husband and wife at the time of the accident was that of bailor and bailee. The supreme court of Pennsylvania, in the case of *Rodgers* v. *Saxton,* 305 Pa 479, 484 (158 A 166, 80 ALR 280), held as follows:

"A joint or shared control of an automobile in which one is riding as a passenger does not necessarily arise from the passenger's marital relationship with the driver or from the fact that the passenger is the car's owner.  The inference that the owner of the car was the bailor and the driver was the bailee is an equally logical inference, and upon a rule for judgment for defendant, *non obstante veredicto,* the plaintiff must be given the benefit of every fact and inference of fact pertaining to the issues involved which may be reasonably deduced from the evidence: *Guilinger* v. *Pennsylvania R. Co.,* 304 Pa 140 (155 A 293).  Mrs. Rodgers' presence in the car does not exclude, as appellee contends, the theory of bailment.  If she delivered that car to her husband, or he took it with her consent, for the purpose of the

trip, he was the bailee of it and she was bailor and guest. There is no rule of law which makes a bailment terminable upon the bailor's sharing with the bailee the use and enjoyment of the subject of the bailment."

This is not to say, of course, that a passenger may not, under some circumstances, extreme though they may be, be guilty of individual fault. But there is the distinction between cases involving a passenger's independent negligence and those in which the negligence of the driver is merely "imputed" to him. These cases are collected in 90 ALR 984.

Equally untenable is the proposition that this fishing expedition, this mutually shared trip for pleasure and recreation, was a "common enterprise" within the meaning of the doctrine permitting the imputation of negligence. Here the wife seems merely to have gone along for the ride. "My wife," testified the husband, "doesn't do very much fishing." He was also asked whether he and his mother "were the ones who really went fishing." His answer was "That is right." (Compare *Fox* v. *Kaminsky*, 239 Wis 559 [2 NW2d 199]. Meta Fox owned the car. The husband was a duck hunter. "Here," held the court [p 566], "the duck-hunting interests of Lloyd Fox were alone responsible for making the trip. * * * It seems to us that this is a plain case of a person being a guest in her own automobile.")

But passing the factual question, or assuming, indeed, that both wife and mother were going fishing, as well as the husband, the question remains whether this was the type of common enterprise required by our law for the application of the imputed negligence doctrine. Here we have no more than a normal, family recreational project in which husband and wife have joined. If this is the common enterprise required by the law, then we have simply elim-

inated the requirement with respect to married couples, for marriage itself is a common enterprise, a joint venture. The supreme court of Virginia well phrased the matter in *Painter* v. *Lingon, supra.* Here a wife, who owned the car, accompanied her husband, who was driving, on a pleasure trip. In rejecting the assertion that the husband's negligence was imputable to the wife on an agency theory arising out of the asserted joint venture, the court held (p 847) that the "marriage vows of husband and wife create a great joint venture. What is beneficial to one spouse is, or should be, beneficial to the other. What is detrimental to one is usually detrimental to the other."

To the same effect is the holding in *Brubaker* v. *Iowa County,* 174 Wis 574, 579 (183 NW 690, 18 ALR 303):

"As fellow travelers they were going from Oshkosh to Sioux City to pursue their several avocations. In one sense husbands and wives in their journey through life are always engaged in joint enterprises, sometimes successful, sometimes disastrous. But the mere fact that they travel in the same car, whether for pleasure or to change their abode, does not constitute a joint enterprise within the meaning of the rule under discussion."

The holdings are equally applicable to the case before us. We need not search for the roots of the common or joint enterprise doctrine, nor need we go so far as the English courts, which largely restrict imputation of negligence to "joint adventurers" for a commercial or business purpose. Prosser, Torts, § 65. In such situations the policies behind the doctrine of *respondeat superior* are, within the limitations of the project, equally applicable. See Douglas, Vicarious Liability and Administration of Risk, 38 Yale L Jour 584; Holmes, Agency, 4 Harv L Rev

345; 5 Harv L Rev 1; Seavey, Speculations as to *"Respondeat Superior,"* Harvard Legal Essays, p 433. Nor do we imply that there may not in fact be a master-servant or a principal-agent relationship existing between husband and wife now that the wife has her legal emancipation under the married women's acts. But no such situations as here mentioned are before us. Here we have no more than a normal recreational venture participated in by both spouses.

We referred at the outset to what we described as the reincarnation of *Thorogood* v. *Bryan.* The reasons are clear: Just as in the *Thorogood Case,* and for much the same reasons, we are to impute the negligence of the driver to the innocent victim of an accident, thus cutting off his claim against a negligent third person. As applied by us it is as automatic in operation as *Thorogood,* and equally devoid of reason and justice, for all we need is the husband-wife relationship (which supplies the common enterprise) and joint title to the car (which supplies the right to control). The result is absolution to the wrongdoer. If the victim had been the driver's betrothed, and title had been in the driver's name only, the negligent third party would, upon the facts before us, have been liable. Change the betrothal to marriage, and put the car in the joint names, and the result is no liability. The result is the more offensive to any reasoned body of tort law because there is an utter lack of causal relationship between the incidents changed and the accident suffered. The result has changed solely because of the fictions employed. As a matter of fact the language employed to reach the *Thorogood* result is completely devoid of reality. Normally, in a negligence case, we speak of duty, and breach, and proximate cause. Here we speak of "right" to control, common "enterprise," and "imputable" negligence.

Putting from our minds for the moment the seductions of easy fictions, what is the realistic legal situation of the parties here before us? Among several thoughtful analyses that have come to our attention,* that of the Minnesota court in *Christensen* v. *Hennepin Transportation Company, Inc.*, 215 Minn 394 (10 NW2d 406, 147 ALR 945), seems most clearly in point. The court held, in part (pp 403, 404):

"In the instant case, plaintiff and her husband apparently were co-owners of the automobile in question. They were regarded as such throughout the case. The husband apparently was in possession of the car and exercising dominion over it, for he invited his wife to ride with him the same as one in possession might invite a person bearing him no relationship. At least, the inference was permissible that he was in possession and had control at the time.

"Ownership of an automobile in which the owner is riding, but which is being driven by another, does not establish as a matter of law right of control in the owner. Right of control may be surrendered, as it often is, where the owner parts with the possession of his car to another. In that situation the parties stand in the relationship of bailor and bailee. The negligence of a bailee in operating an automobile is not imputable to the bailor. *Mogle* v. *A. W. Scott Co.*, 144 Minn 173 (174 NW 832). The existence of the marriage relation between the parties does not change their relationship or liabilities with respect to bailed property. In *Nash* v. *Lang*, 268 Mass 407 (167 NE 762), the wife sued for damages to her automobile, which she had loaned to her husband. Defendant claimed that the husband was negligent and his negligence was imputable to the wife. In a very well considered opinion, Mr. Chief Justice Rugg, speaking for the court, said that the relation between the wife and husband was that of bailor and bailee

* See Prosser, Torts, § 65; 2 Harper and James, Torts, § 23.1; Weintraub, The Joint Enterprise Doctrine in Automobile Law, 16 Cornell L Quart 320.

and that (268 Mass 412, 167 NE 764) 'the contributory negligence of the bailee, concurring with that of a third person to injure the bailed property, is not to be imputed to the bailor who is free from any negligence.' In the *Nash Case* the wife was not riding with the husband at the time of the collision. Here she was. But that does not change the result as a matter of law.

"The marriage relationship does not, as a matter of law, constitute one spouse driving an automobile the agent or servant of the other present therein as a guest passenger, and consequently in such cases the negligence of the one driving is not imputable to the other."

The judgment of no cause for action is set aside and the cause remanded to the trial court for entry of judgment in the sum of $4,500 in accordance with the conditional stipulation of the parties. Costs to appellant.

BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with SMITH, J.