NAGELE-KELLY MANUFACTURING
COMPANY *v.* HANNAK.

1. NEGLIGENCE—IMPUTED CONTRIBUTORY NEGLIGENCE—EMPLOYER.
    The doctrine of imputed contributory negligence prevents an em-
    ployer whose servant was contributorily negligent in an acci-
    dent causing damage to employer's property from recovering
    damages from a negligent defendant.

2. SAME—IMPUTED CONTRIBUTORY NEGLIGENCE—MASTER AND SERV-
ANT.
    The doctrine of imputed contributory negligence has been largely
    but not completely abolished in Michigan and it remains in ef-
    fect in an action by an employer against a third party for
    *property* damage suffered as a result of the negligence of the
    third party and the employer's servant, thus preventing recov-
    ery by the employer in such a case.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 38 Am Jur, Negligence §§ 186, 236.
[3] 38 Am Jur, Negligence § 236.
  8 Am Jur 2d, Automobiles and Highway Traffic §§ 674–676.
[4] 30A Am Jur, Judgments § 631.

3. SAME—AUTOMOBILES—IMPUTED NEGLIGENCE—OWNER'S LIABILITY
   —EMPLOYER.

   A driver's negligence may not be imputed to a vicariously liable
   *owner* in Michigan, but this does not bar the imputation of the
   driver's negligence to his *employer*.

4. JUDGMENT—AMENDMENT OF JUDGMENT—COMMON PLEAS COURT.

   The common pleas court is an important court exercising jurisdic-
   tion over a wide range of cases and there should be no doubt
   that it enjoys the same power to correct its own errors by
   amending judgments as does the circuit court.

Appeal from Common Pleas Court of Detroit, Mc-
Nally (Gerald A.), J., presiding. Submitted Divi-
sion 1 May 6, 1968, at Detroit. (Docket No. 3,037.)
Decided September 25, 1968. Leave to appeal denied
January 15, 1969. 381 Mich 797.

Complaint by Nagele-Kelly Manufacturing Com-
pany, an Ohio corporation, and Aetna Insurance
Company, a foreign corporation, subrogee of
Nagele-Kelly Manufacturing Company, against Joan
Marie Hannak for automobile negligence. Verdict
and judgment for plaintiffs. Defendant appeals.
Reversed.

*Michael J. Kelly,* for plaintiffs.

*Becker, Mitchell & Phillips,* for defendant.

LEVIN, P. J. An automobile owned by the plaintiff
Nagele-Kelly Manufacturing Company collided with
one driven by the defendant Joan Marie Hannak.
The Nagele-Kelly automobile was being driven on its
business by one of its employees.

The trial judge, who sat without a jury, found both
drivers negligent. After reading *Universal Under-
writers Insurance Company* v. *Hoxie* (1965), 375
Mich 102, the judge concluded Nagele-Kelly was

guilty of contributory negligence because its driver's negligence must be imputed to it. A judgment of no cause of action was entered denying Nagele-Kelly recovery for damages to its property alleged to have been suffered in the collision.

Within 20 days after entry of the judgment Nagele-Kelly moved to amend the judgment pursuant to GCR 1963, 527.5. At the hearing on the motion to amend judgment, the trial judge decided his first reading of *Universal Underwriters* was erroneous, and that correctly interpreted that decision holds: "that an employer may not be held responsible for the negligent acts of his employee, unless he has actual control over the driving of the employee."[1] The original judgment was thereupon set aside and judgment was entered in favor of Nagele-Kelly for damages caused its property by the collision. We think the trial judge was right the first time and, accordingly, reverse.

The doctrine of imputed contributory negligence has a bad reputation and has been abrogated in most applications, both in this State and elsewhere. Nevertheless, a majority of our Supreme Court has refused to abolish the doctrine altogether. In *Universal Underwriters,* 4 justices stated (pp 110, 112) that *Bricker* v. *Green* (1946), 313 Mich 218, did not abolish the doctrine of imputed negligence, "rather it repudiated the doctrine as it had previously been applied in actions by a blameless passenger against a third party." One justice concurred in the result,[2] but did not sign any of the 2 concurring and 1 dissenting opinions. While 3 justices were prepared to

---

[1] It has not been asserted Nagele-Kelly had actual control of its employee's driving at the time of the accident.

[2] *Universal Underwriters* allowed an automobile dealer's insurer to recover as the dealer's subrogee from a third-party driver for damages done to the dealer's automobile in a collision between the third party's and the dealer's automobile without regard to the negligence of the customer of the dealer who was driving the dealer's automobile.

hold the doctrine altogether abolished, we are satis-
fied a majority of the Court has not yet been mus-
tered to achieve that result. The opinions signed by
a majority of the Court in *Universal Underwriters*
retain for Michigan the imputed contributory negli-
gence doctrine at least for the kind of case here pre-
sented—an action by an employer against a third
party for *property* damage suffered as a result of
the servant's and the third party's negligence.

Just 4 years ago the American Law Institute,
while generally rejecting the imputed contributory
negligence doctrine,[3] readopted its prior statement
concerning the doctrine's application to actions by an
employer:

> "A master is barred from recovery against a negli-
> gent defendant by the negligence of his servant act-
> ing within the scope of his employment." Restate-
> ment, Second, Torts, § 486

Prosser stated in the third edition of his work,
Prosser on Torts, published in 1964, that while the
doctrine of imputed contributory negligence has been
largely abolished where the agency is fictitious, *i.e.*,
driver-passenger, husband-wife, bailor-bailee,

> "if the plaintiff and the third person stand in such
> a relation to one another—as for example that of
> master and servant—that the plaintiff will be
> charged with that person's negligence as a defend-
> ant, it will ordinarily follow that he will likewise be
> charged with it as a plaintiff." Prosser, Law of
> Torts (3d ed), p 501.

Prosser goes on to observe (p 501) that "there may
be special reasons of policy in particular cases which
will lead to the imputation of the negligence to a de-
fendant, but not to a plaintiff." Professors Harper

---

[3] Restatement, Second, Torts, § 485. See, also, Restatement, Second,
Torts, Tentative Draft No 9, § 485, p 51, for Note to Institute on
reasons for suggested changes in § 485.

and James wrote favorably of those cases which refused to apply the doctrine to bar recovery by a vicariously liable automobile owner on account of the negligence of one operating the owner's car with his express or implied consent.   Harper and James, The Law of Torts, § 23.6, pp 1274, 1275.[4]

Michigan is aligned with those States which do not allow imputation of the driver's negligence to the vicariously liable *owner*.[5]   Thus, the negligence of Nagele-Kelly's driver may not be imputed to it on account of its vicarious liability under the owner liability statute.

However, it does not necessarily follow that the driver's negligence may not be imputed to Nagele-Kelly as the driver's *employer* in this action to recover property damage.   It has been suggested by respectable authority there may be valid policy reasons for continuing to impute to the employer the negligence of his employee in a suit by the em-

---

[4] Similarly, see Prosser, Law of Torts (3d ed), pp 500, 501:

"A few courts have interpreted the [owner liability] statute to impute the driver's negligence both ways, so that the owner's action is barred.   The greater number of courts have looked to the purpose of the statute, which is obviously to protect injured plaintiffs against the financial irresponsibility of drivers, and not to diminish any recovery which would otherwise be allowed; and accordingly they have held that the legislation does not have the effect of imputing contributory negligence."

For Michigan's owner liability statute see CL 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101).

[5] In *Universal Underwriters*, Mr. Justice O'HARA, in an opinion signed by an additional justice, concluded his opinion with the following observation (375 Mich 102, 112): "I agree, further, with my Brother that the 'ownership statute' imposes liability upon the owner for the acts of one driving with the owner's express or implied consent, but that it does not relate the driver's negligence to the owner in an action against a third party."   This, coupled with Mr. Justice ADAMS' opinion, signed by 2 other justices, which would have abolished the doctrine of imputed contributory negligence altogether, leads us to conclude that in Michigan the negligence of a driver may not be imputed to the vicariously liable owner.

432        13 MICH APP 427.        [Sept.
OPINION OF THE COURT.

ployer for *property* damage.[6]   We are persuaded
that the Michigan Supreme Court has declined to
abolish application in such a case of the imputed con-
tributory negligence doctrine.

This brings us to *Weber v. Stokely-Van Camp, Inc.*
(1966), 274 Minn 482 (144 NW2d 540), a case heavily
relied on by Nagele-Kelly, the plaintiff-employer in
this case.   *Weber* holds that an employee-driver's
negligence is not imputable to a plaintiff-employer
seeking recovery for *injuries* sustained while a pas-
senger in an automobile driven by his employee.
While the court criticized the doctrine of imputed
contributory negligence in general, it limited its
holding to the factual situation there presented, a
factual situation different from the one presently at
hand.

If this were an action by an employer-passenger
against a third party for personal injuries suffered

6 While recognizing there would be little justification for imputing
negligence to an innocent plaintiff in most cases, Professors Harper
and James make the following observation:
"A possible justification may be suggested where the risk of loss
to property is a recurring and calculable one in the owner's business.
The owner of a fleet of trucks or buses, or of automobiles for rent,
or of automobiles on conditional sale, would furnish examples.   In
such a case the owner typically makes provision for distributing this
property loss—by insurance or otherwise—whether it is caused by the
servant's or the bailee's negligence or not.   Where that is the case
the loss is at once put into channels for its wide distribution without
resort to the relatively inefficient method of tort liability; and society
may well lose rather than gain from any step which would encourage
the cumbersome attempts to pursue the matter further in the hope of
getting a nicer adjustment to an illusory concept of fault.   That pur-
suit puts additional burdens on our already overworked judicial ma-
chinery; and it often lets good loss distributors throw some of their
losses on individuals who cannot distribute them at all.   *   *   *
Similar considerations might justify the imputation of negligence to
employers of labor (as the present rule does).   *   *   *
"it should be noted that most of the claims that are barred by im-
puted contributory negligence today are property damage claims by
parties who employ labor and are likely to provide for property dam-
age claims in the way described.   Such losses do not pose the social
problem or build up the same pressures for redress that personal in-
juries and death have.   So it is not unlikely that the imputed negli-
gence doctrine may remain where it is now entrenched, save possibly
in the field of 'joint enterprise'." Harper and James, The Law of
Torts, § 23.6, pp 1276, 1277.

as a result of the negligence of the third party and of his employee, we might, like the *Weber* court, conclude that our Supreme Court did not intend by its statements in *Universal Underwriters* to bar recovery in such a case on the basis of imputed contributory negligence.[7] We are not, however, confronted with an action by a personally injured employer-passenger but rather one by an employer who seeks recovery for *property* damage. The doctrine of imputed contributory negligence still operates to bar recovery by an employer in such a case.

Our conclusion makes it unnecessary for us to decide whether the trial judge had the power to grant

---

[7] *Sherman* v. *Korff* (1958), 353 Mich 387, held that a husband could, without regard to his wife's negligence, recover from a third party for injuries suffered in a collision between the third party's car and one owned by the husband and his wife, the latter's car being operated by the wife at the time of the collision.

*Sherman* v. *Korff* and *Weber* both allude to the same consideration, namely, it is better for a passenger who may have some right of control to abstain from exercising it rather than indulge in back seat driving.

See *Weber*, p 545: "We can think of nothing more dangerous in these days of congested travel on highspeed highways than to permit a master riding as a passenger in a car driven by his servant constantly to interfere with the servant's driving, or his attempt to exercise a theoretic right of control. To do so would be the clearest evidence of active negligence on the part of the master, for which he would be chargeable without imputing to him the negligence of his servant. Imputed negligence, on the other hand, presupposes that the master is innocent of any fault. How, then, can we reconcile the theory of right to control the exercise of which would charge the master with negligence and imputed negligence based on the theory that he is free from any fault? The two just do not hang together."

See *Sherman* v. *Korff*, supra, p 395: "Any attempted exercise of the right of control by wresting the wheel from the driver would be foolhardy. Equally menacing to the driver's efficient operation of the machine are raucous reproaches, strident denunciations, or even persistent unctuous admonitions from the back seat."

As to the undesirability of barring recovery for personal injuries suffered by an innocent plaintiff on account of another's negligence, see discussion in Harper and James, The Law of Torts, quoted above in footnote 6.

*Ter Haar* v. *Steele* (1951), 330 Mich 167, 169, need not be regarded as controlling authority because there, "Neither party question[ed] the law that any contributory negligence of Underhill's would be imputable to his employer, the plaintiff." See *Bostrom* v. *Jennings* (1949), 326 Mich 146, 156; *Howard Pore, Inc.* v. *State Commissioner of Revenue* (1948), 322 Mich 49, 72.

Nagcle-Kelly's motion to *amend the judgment* first entered against it. While we are inclined to the view that a common pleas judge is empowered to enter the modifying order here entered,[8] the attention of the

---

[8] Ordinarily a justice court cannot set aside a verdict, arrest judgment or grant a new trial. 14 Callaghan's Michigan Pleading and Practice (2d ed), § 119.42; CLS 1961, § 600.6611 (Stat Ann 1962 Rev § 27A.6611). Compare *People v Foote* (1843), 1 Doug 102; *Alt v. Lalone* (1884), 54 Mich 302; *Wagner* v. *Kellogg* (1892), 92 Mich 616, with *Hodges* v. *Bagg* (1890), 81 Mich 243; *Weiss Kemnitz Co.* v. *Ehlert* (1927), 241 Mich 34; and *National Cash Register Co.* v. *Richards* (1909), 159 Mich 128. However, § 19 of the common pleas court act (PA 1929, No 260; CL 1948, § 728.19 [Stat Ann 1962 Rev § 27.3670]) provides, among other things that all provisions of general statutes, local or special acts relating to justices of the peace and to justice courts of the city shall apply to the common pleas court to the extent not inconsistent with the provisions of the common pleas court act.

Section 21 of Local Acts 1903, No 475, establishing and providing for justice courts in the city of Detroit provides that "The justice before whom any cause has been tried and verdict or judgment rendered, shall have the same power and authority to set aside the verdict and judgment and grant a new trial thereon upon legal cause shown therefor, as the circuit courts of the State possess; provided, That a motion in writing be made and filed with the clerk of said justice courts within five days after the rendition of the verdict or judgment in said case." See, also, Smith, Detroit Common Pleas Practice (1938), § 22.

Common pleas court of Detroit rule 18 provides that motions for new trial shall be filed within 5 days after the rendition of judgment. Common pleas court of Detroit rule 39 reads: "In all matters not herein provided for, or not expressly prohibited or specified by statute, the Michigan Court Rules shall govern." Common pleas court of Detroit rule 18 has been amended effective July 1, 1968 to permit a motion for new trial to be filed within 15 days after rendition of judgment. Common pleas court of Detroit rule 17 has been amended to provide that motions for rehearing shall be filed within 10 days after rendition of decision. (For the amendments referred to, see Honigman and Hawkins, Michigan Court Rules [1968 Cum Supp p 118].)

At the times Local Acts 1903, No 475 and the common pleas court act were enacted, the time for filing a motion for new trial in circuit court was 5 days. See Circuit Court Rules (1897) No 21. The language of the 1897 rule was continued in substantially the same form by Circuit Court Rules (1916) No 48 and General Court Rules (1933) No 47; the time limit for filing the motion was enlarged to 20 days by the 1933 rules. The subject matter is now covered by GCR 1963, 527.

See, also, *General Necessities Corporation* v. *Wayne Circuit Judge* (1921), 214 Mich 138, 140; *Uhrstadt* v. *Sauer Cooperage Co.* (1944), 309 Mich 201, 204, and *People* v. *Wayne Circuit Judge* (1870), 20 Mich 220, stating that despite the court rule prescribing a 5-day (later 20-day) time limit for motions for new trial, circuit judges continue to enjoy the discretion to grant a motion for new trial recognized by the common law as belonging to them as an inherent power, which

legislature and Supreme Court is directed to the matter. The common pleas court is an important court exercising jurisdiction over a wide range of cases and there should be no doubt that it enjoys the same power to correct its own errors of judgment as does the circuit court.

Reversed and remanded for the entry of judgment of no cause of action. Costs to appellant.

R. B. BURNS and DALTON, JJ., concurred.

discretion may be exercised out of time. Compare *Patrons Mutual Fire Insurance Co.* v. *Pechta* (1922), 219 Mich 430.

See, also, *Guastello* v. *Citizens Mutual Insurance Company* (1968), 11 Mich App 120, concerning enlargement in the exercise of judicial discretion, of court rule time limitations after their expiration.