TROUTMAN v OLLIS

Docket No. 87838. Submitted November 4, 1986, at Lansing. Decided
December 8, 1987. Leave to appeal applied for.

   Clyde R. Troutman and Mary Troutman, individually and as next
   friends of their minor children, Clyde J. Troutman and Keith
   Troutman, brought a negligence action in Ingham Circuit Court
   against Randall P. Ollis, Richard H. Deneff, Robert T. Schaften-
   aar, Bradley K. Miller and Arnold Weaver. Plaintiffs sought
   damages for injuries sustained in a motor vehicle accident
   wherein plaintiffs' pickup-camper was struck by a motorhome
   owned by defendant Weaver and driven by defendant Ollis,
   with the remaining defendants riding as passengers. The trial
   court, Carolyn Stell, J., granted summary disposition in favor
   of the defendants who were passengers in the motorhome,
   ruling that plaintiffs had failed to state a claim upon which
   relief can be granted in alleging that these defendants are
   liable under a joint enterprise theory. The trial court addition-
   ally granted summary disposition in favor of defendants on
   plaintiff Clyde R. Troutman's claim for damages, ruling that
   his injuries did not amount to serious impairment of bodily
   function and that, therefore, defendants were entitled to judg-
   ment as a matter of law. Plaintiffs appealed.
   The Court of Appeals held:
   1. The negligence of a driver may be imputed to his passen-
   gers under the theory of joint enterprise so as to allow recovery
   of damages from the passengers by an injured person not party
   to the joint enterprise where there is (1) a community of
   interest in the use of the vehicle, (2) a common responsibility
   for the automobile's negligent operation, and (3) the driver is
   acting as the agent of the other members of the enterprise.
   2. Plaintiffs stated a claim upon which relief can be granted
   with their allegations of joint enterprise and the claim is not so

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 634, 758-760, 1120.
Fact that passenger in negligently operated motor vehicle is owner
   as affecting passenger's liability to or rights against third person
   —modern cases. 37 ALR4th 565.

clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover.

3. The trial court correctly ruled that plaintiff Clyde R. Troutman did not suffer from serious impairment of bodily function under the guidelines set out in *Cassidy v McGovern,* 415 Mich 483 (1982). However while this case was pending on appeal, the Supreme Court, in *DiFranco v Pickard,* 427 Mich 32 (1986), substantially changed the *Cassidy* guidelines. The trial court's order of summary disposition as to plaintiff Clyde R. Troutman's claim was vacated and the case was remanded for further proceedings consistent with *DiFranco.*

Reversed and remanded.

NEGLIGENCE — JOINT ADVENTURES — AUTOMOBILES — PASSENGERS.

The negligence of an automobile driver may be imputed to his passengers under the theory of joint enterprise so as to allow recovery of damages by an injured person not party to the joint enterprise where there is (1) a community of interest in the use of the vehicle, (2) a common responsibility for the automobile's negligent operation, and (3) the driver is acting as the agent of the other members of the enterprise.

*Bushnell, Gage, Doctoroff & Reizen* (by *George E. Bushnell, Jr.,* and *William F. Ager III*), for plaintiffs.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *Frederick M. Baker, Jr.,* and *Curtis R. Hadley*), for defendants Schaftenaar and Miller.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Brett J. Bean*), for defendant Deneff.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and P. J. CLULO,* JJ.

P. J. CLULO, J. On August 5, 1980, plaintiffs filed a complaint for damages arising out of a motor-vehicle accident on June 21, 1980. Plaintiffs now appeal as of right from a final order of summary disposition entered September 16, 1985, in Ingham

* Circuit judge, sitting on the Court of Appeals by assignment.

Circuit Court. The lower court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) on the grounds that plaintiffs failed to state a claim upon which relief can be granted. Additionally, the lower court ruled that the injuries sustained by plaintiff Clyde R. Troutman were insufficient to constitute a serious impairment of bodily function and consequently granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse.

During June of 1980, defendant Arnold Weaver had a motorhome for sale in Holland, Michigan. A few days before June 20, 1980, defendant Robert Schaftenaar called Weaver and asked if he could borrow the motorhome to go to a Bob Seger concert in Detroit. A couple days before the concert, Weaver told Schaftenaar that he could use the motorhome. At that time Schaftenaar and defendants Bradley Miller, Randall Ollis, and Michael Deneff were thinking about buying the motorhome together. Schaftenaar collected $2,500 from each of them and on June 20, 1980, brought the money to the place where the motorhome was parked. He was supposed to meet Weaver there and attempt to persuade him to accept $10,000 in cash for the motorhome instead of the amount Weaver was asking, i.e., $13,500. The other three men were also present at that time. Weaver encouraged them to test drive the motorhome before they purchased it. The four men got into the motorhome and told Waver that they were going to take it to Detroit that day. Plaintiffs allege that defendants agreed to purchase it prior to the trip. Defendants allege that they did not intend to agree with Weaver to purchase the motorhome at that time but, rather, borrowed it for a test drive. Prior to leaving, the four men agreed to share expenses for the purchase of gas and chicken. The

four men left at about 12:00 P.M. from Holland with Miller driving and drove to the home of Mike Little in Plymouth, where they picked up tickets for the concert. Defendant Miller drove from Holland to Plymouth. Once in Plymouth, the group decided that the motorhome was too big to drive in downtown Detroit. Therefore, the group chose defendant Ollis, who had lived in Detroit and knew the area, to drive them in Little's vehicle from Plymouth to the concert at Cobo Hall.

Following the concert, defendant Ollis drove the group back to Little's house in Plymouth, arriving at approximately 3:30 A.M. Defendant Ollis testified that he did not consume any beer, alcohol or drugs from the time they left Holland until the time of the accident except for a fraction of a one-half pint bottle of peppermint schnapps and one Valium pill which he consumed at approximately 11:00 P.M. The group sat around Little's home until approximately 5:30 A.M. when they decided to drive back to Holland and return the motorhome to Weaver. Defendants Schaftenaar, Miller, and Deneff wanted to sleep so they asked defendant Ollis if he would drive home. A discussion took place between defendant Ollis and some of the other defendants regarding his ability and condition to drive. Defendant Ollis convinced them he was capable of driving and they began their trip home. Defendants Schaftenaar and Miller observed defendant Ollis for approximately twenty minutes before falling asleep, "just to make sure everything was going all right."

While defendants were driving westbound on I-96, plaintiff Clyde Troutman was also traveling westbound on I-96 in a pickup truck with a camper on top, pulling a trailer with a catamaran sailboat. Plaintiff's wife and two children were asleep in the camper. When they reached a rest

area near Okemos, plaintiff recognized the van and trailer of Jeannette Oldford, his wife's sister, parked at the rest area. Plaintiff pulled over to the right shoulder of the road, got out of the pickup truck, and walked towards his sister-in-law's vehicle. He spoke with Mrs. Oldford and her children, and the four of them walked back to plaintiff's truck to exchange greetings with plaintiff's wife, plaintiff Mary Troutman. When Mary Troutman opened the door of the camper, the motorhome driven by defendant Ollis crashed into plaintiff's trailer from behind. Defendant Ollis had fallen asleep at the wheel and lost control of the motorhome. Clyde R. Troutman received lacerations on his hands and arms, but did not require hospitalization. Keith Troutman, Clyde's son, sustained a concussion and a separated shoulder. Clyde J. Troutman, Clyde's other son, sustained a fractured left femur and lacerations. Plaintiff Mary Troutman suffered a fractured neck, a lacerated elbow, a broken pelvis, and bruises. Daniel Oldford and Kenneth Oldford, plaintiff's nephews were killed.

Plaintiffs urge that the lower court erred in granting the defendants' motion for summary disposition pursuant to MCR 2.116(C)(8). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the pleadings alone. All well pled allegations must be taken as true. The motion should be denied unless the alleged claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Dzierwa v Michigan Oil Co,* 152 Mich App 281, 288; 393 NW2d 610 (1986); *Sanders v Clark Oil Refining Corp,* 57 Mich App 687, 689; 226 NW2d 695 (1975). In passing on the defendants' motion, the lower court ruled as follows:

[*The Court*]: Thank you. The motion was

brought under two subsection of MCR 2.116(C) and I am considering it first under Subsection 8, failure to state a claim of action upon which relief can be granted.

Defendant has eloquently argued a line of cases that demonstrates that there is no precedence [sic.] in Michigan for Plaintiffs' ability to impute the negligence of a driver to passengers in that driver's car rather than the vehicle in which Plaintiffs themselves are injured. The reported cases which go on to discuss joint venture in great detail are those concerning the imputed negligence of the driver in cases where the plaintiffs are passengers in the automobile of that allegedly negligent driver.

It is my interpretation of the cases that to the extent that joint enterprise still applies in auto negligence and, without making a finding on that, that it does not apply to cases in which plaintiffs are not occupants of the same motor vehicle as the allegedly negligent driver. I think that Plaintiffs are attempting to create new law, which is admirable, but I think that new law is better created at the appellate level than at the trial court level. For that reason I am granting the motion for summary disposition pursuant to MCR 2.116(C)(8).

We agree with the position of the lower court in two respects. First of all, the court implies without making a finding that joint enterprise still exists as a viable theory as applied to auto negligence cases in the State of Michigan. Secondly, there are no reported cases in Michigan in which that theory has been used offensively to hold a group of people (joint enterprisers) liable for the negligence of one of them where the plaintiff was in a different vehicle than the joint enterprisers.

The general theory and definition of joint enterprise liability is well stated in 58 Am Jur 2d, Negligence, §§ 458, 459, pp 18-19:

In certain cases the negligence of one person

may be imputed to another to charge the latter with liability to a third person injured by reason of such negligence. Generally, where there is an attempt to hold one person civilly liable for the negligence of another, it must be made to appear . . . that the person sought to be held responsible was engaged in a joint venture or enterprise with the one who was negligent.

When the negligence of a member of a joint enterprise causes injury to a third person, such negligence is imputable to the other members of the enterprise and all may be held liable for the injury. The term "joint enterprise" has been defined as the pursuit of an undertaking by two or more persons having a community of interest in the object and purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other,, which arises only out of a contract or agreement between the parties which may be express or implied.

Michigan follows the joint enterprise theory of liability. *Farthing v Hepinstall,* 243 Mich 380; 220 NW 708 (1928); *Frisorger v Shepse,* 251 Mich 121, 123; 230 NW 926 (1930); *Bostrom v Jennings,* 326 Mich 146, 152; 40 NW2d 97 (1949); *Boyd v Mc-Keever,* 384 Mich 501, 503; 185 NW2d 344 (1971); *Massey v Scripter,* 401 Mich 385, 396; 258 NW2d 44 (1977) (using the term "joint venture"); *Lauer v Green,* 38 Mich App 81, 84; 195 NW2d 781 (1972), lv den 387 Mich 765. The cases involving joint enterprise liability in the automobile accident setting have involved one of two fact situations: (1) the negligence of the driver-defendant is imputed to the passenger-plaintiff so as to bar plaintiff's cause of action against defendant, see *Frisorger, supra;* (2) the contributory negligence of the driver is imputed to the passenger-plaintiff so as to bar plaintiff's action against a third person, see *Farthing, supra.* The first type of case, wherein the

negligence of the driver-defendant is imputed to the passenger-plaintiff so as to bar plaintiff's action against the defendant, was overruled by our Supreme Court's decision in *Bostrom, supra.* Thus, the negligence of the driver is no longer imputed to his passenger-plaintiff to bar plaintiff from suing the driver.

The concept of joint enterprise in the context of an automobile negligence case in Michigan has been defined by the Supreme Court as follows:

> To constitute a joint enterprise between a passenger and the driver of an automobile within the meaning of the law of negligence, there must be such a community of interest in its operation as to give each an equal right of control. There must be a common responsibility for its negligent operation, and there can be no common responsibility unless there is a common right of control. It must be held that the driver is acting as the agent of the other members of the enterprise. The rule of joint enterprise in negligence cases is founded on the law of principal and agent. On no other theory could the negligence of the driver be imputable to a passenger. [*Farthing, supra,* 382.]

Michigan courts have not yet addressed whether joint enterprise may be asserted offensively by an injured third party who is not a member of a joint enterprise to impute negligence between a negligent driver and his passengers who are members of a joint enterprise. Few states have addressed this question. Dean W. Prosser notes:

> In relatively few cases, the passenger has been charged with liability as a defendant to a third person injured by the driver's negligence. It is not altogether clear why this has not occurred more frequently, unless it is that, with a financially responsible defendant available in the negligent

driver, the plaintiff has not thought it desirable to complicate matters by joining one who is personally innocent. [Prosser, Torts (4th ed), § 72, pp 517-518.]

In *Straffus v Barclay,* 147 Tex 600; 219 SW2d 65 (1949), an eighty-two-year-old father and his daughter were returning from a trip to a nearby town where they had purchased groceries and cleaned a church. While the daughter was driving, they collided with plaintiff's car. The plaintiff sought recovery from both the daughter-driver and the father-passenger. Plaintiff's claim against the father-passenger was based on a joint enterprise theory of liability. The court, which affirmed plaintiff's recovery against the father-passenger, reasoned that under the theory of joint enterprise each member of the enterprise is the agent of the other and therefore responsible for the negligent acts of the other. Thus, it may have the effect of making a passenger liable to a third person not a party to the enterprise. *Id.,* 603; 219 SW2d 68.

In *Ahlstedt v Smith,* 130 Neb 372; 264 NW 889 (1936), a driver and his passengers decided to drive to a store to purchase some cigarettes. They drove a short distance before colliding with the plaintiff. The Supreme Court of Nebraska held that the driver and passengers were engaged in a joint enterprise at the time of the accident. The driver's negligence was therefore imputed to the passengers permitting plaintiff's recovery. Also, see *Jones v Kasper,* 109 Ind App 465; 33 NE2d 816 (1941).

Plaintiffs point to other states that have recognized that the joint enterprise theory can be used offensively against a negligent driver's passengers and further found no right to recover factually. See *Stock v Fife,* 13 Mass App 75; 430 NE2d 845 (1982) (driver and passengers had no agreement

with respect to the sharing of expenses or driving responsibilities); *Cecil v Hardin,* 575 SW2d 268 (Tenn, 1978) (passengers had no right to control operation of automobile and passengers and driver were associating together for purely social purposes); *Coffman v Kennedy,* 74 Cal App 3d 28; 141 Cal Rptr 267 (1977) (plaintiff's complaint failed to allege that the passengers had an equal right to control the vehicle); *Florida Rock & Sand Co v Cox,* 344 So 2d 1296 (Fla, 1977); *Easter v McNabb,* 97 Idaho 180; 541 P2d 604 (1975) (passenger had no pecuniary or commercial interest in traveling with the driver); *Mims v Coleman,* 248 SC 235; 149 SE2d 623 (1966) (passenger had no control over automobile's operation); *Manley v Horton,* 414 SW2d 254 (Mo, 1967) (court remanded for a new trial so the jury could determine whether a joint enterprise existed).

The defendants argue vigorously that the court should not extend the common law of joint enterprise to cover the claim of plaintiffs. They argue that the common use of the plaintiffs' theory recognized heretofore by Michigan was to allow them to avoid the gross negligence requirement of the guest passenger statute, MCL 257.401; MSA 9.2101, which was ruled unconstitutional by the Michigan Supreme Court in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). The reason for plaintiffs' suing under that theory thus having been eliminated, the defendants argue against any extension.

Defendants also point to Prosser's criticism of the general doctrine:

One must seriously doubt the logic and fairness of imposing vicarious responsibility, whether as Plaintiff or as Defendant, upon the passenger who is engaged in a "joint enterprise," for the negli-

gence of his driver. The contractual agreement by which he is said to enter into such an arrangement is all too obviously a fiction in situations where parties have merely gotten together for the ride; and upon this there is erected a second fiction, that the passenger shares "a right of control" of the operation of the vehicle; and on this there is erected in turn a third fiction, that the driver is his agent or servant. This topheavy structure tends to fall of its own weight. In the usual case the passenger has no physical ability to control the operation of the car and no opportunity to interfere with it; and any attempt on his part to do so in fact would be a dangerously distracting piece of backseat driving which might very well amount to negligence in itself. [Prosser, Torts (4th ed), § 72, p 522.]

Our review of Prosser's criticism reveals his opinion that the typical case represented by plaintiffs' claim in the case at bar has difficult proof problems. We do not disagree with that observation. However, it is irrelevant to the issue before us.

Defendant finally argues that the joint enterprise doctrine has been criticized by the Michigan Supreme Court in *Sherman v Korff,* 353 Mich 387; 91 NW2d 495 (1958). This, they point out, should be kept in mind by this Court before any extension of the doctrine is contemplated. The court's dicta is interesting in its application to the facts of that case, but irrelevant here. *Sherman, supra,* stands for the proposition that the marital state does not provide a basis for a joint enterprise finding in a case where a wife was driving, a husband was a passenger, and they were joint owners of the automobile. The case held nothing more than that and is not persuasive support of defendants' position.

Our review of the case law shows that Michigan recognizes a claim of joint enterprise liability as

one upon which relief may be granted. The question raised by the defense is whether the plaintiffs are of a status or in a class of persons who can invoke the theory against defendants. The defendants argue that the facts that the plaintiffs were not in the same car with the defendants is dispositive. This is not persuasive as a reason for denying plaintiffs' claim. Simply because no Michigan case can be found that deals with the factual scenario does not mean that the joint enterprise theory is not available to plaintiffs such as these, assuming that a factual basis can be made to sustain a joint enterprise finding. We therefore rule that plaintiffs' complaint does state a claim upon which relief can be granted and we cannot say that the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover.

The lower court did not pass on the defense motion for summary disposition pursuant to MCR 2.116(C)(10) because of its ruling on the status of the cause of action under the (C)(8) motion. Although invited by the defendants to pass on that motion pursuant to *DeWitt Twp v Clinton Co,* 113 Mich App 709, 713; 319 NW2d 2 (1982), and MCR 7.216(A)(7), we are reluctant to do so on the record before us. That motion can be heard by the lower court on remand.

Plaintiffs next claim error in the lower court's grant of defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) on the grounds that plaintiff Claude R. Troutman did not suffer serious impairment of bodily function. The lower court reviewed this matter under the rules of *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983). We believe the trial court ruled correctly under *Cassidy.* However, our Supreme Court in the recent decision of

*DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986), substantially changed the *Cassidy* guidelines. This appeal was pending when *DiFranco* was decided and the trial court should be given the opportunity to apply the *DiFranco* standard. The lower court's order granting defendants' motion for summary disposition is vacated and the matter is remanded for further proceedings in conformity with *DiFranco.*

Reversed and remanded.