JOSEPH C. WEBER v. STOKELY-VAN CAMP, INC.

144 N. W. (2d) 540.

July 29, 1966—No. 39,967.

*Frundt & Hibbs,* for appellant.

*Robb, Robb & Van Eps* and *M. W. Gaughan,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff, Joseph C. Weber, is engaged in the business of supplying and servicing vending machines and coin-operated games in an area in Minnesota involving part of Martin County. Maynard S. Sunken was employed by Weber in such business.

Warren Curtis Musser was an employee of defendant, Stokely-Van Camp, Inc.

On September 18, 1963, while Sunken was driving Weber's 1962 Chevrolet pickup truck in the scope of his employment he was involved in a collision with a 1963 Ford pickup truck owned by defend-

ant and driven by Musser, also engaged in the scope of his employment. Weber, riding with Sunken at the time of the collision, suffered personal injuries along with damage to his truck. He sued defendant for the negligence of its agent Musser. Defendant answered, denying any negligence on the part of Musser, and alleged the contributory negligence of Weber's employee which, when imputed to Weber, would bar recovery.

It is admitted that while Sunken would usually drive when he and Weber were on business trips together, Weber frequently told him where to go and what route to take. Sunken testified that Weber did not direct him in his driving but that he would have obeyed any order had it been given.

The court instructed the jury that as a matter of law the negligence of Sunken would be imputed to Weber under these circumstances. The jury returned an 11 to 1 verdict for defendant and this appeal followed.

The questions presented are whether the court erred in the above instruction, and whether certain members of the jury were guilty of such misconduct as to demand a new trial. The facts pertinent to this latter issue will be stated when the issue is discussed.

■ It must be conceded that based on existing case law the trial court's instruction concerning imputed negligence was correct, and if Sunken was found to be contributorily negligent, Weber cannot recover. The rule is based on the right of control, not the exercise of it; and illogical as the rule may be, the master has a theoretical right to control under the facts of this case, even though he does not exercise it and has little or no opportunity to do so. Essentially, imputation of the negligence of a servant to a master rests on a so-called "both-way test"—that is, if the master is vicariously liable to a third party due to the agent's negligence, he is also barred from recovery because his agent's negligence is imputed to him. In Frankle v. Twedt, 234 Minn. 42, 45, 47 N. W. (2d) 482, 486, we said:

"* * * On the basis of an agency relationship, the negligence of an agent is imputed to his principal as a bar to the latter's right of recovery, in an action which he brings against a third party, *only* when the

nature of the agency relationship is such that the principal would be subject to a vicarious liability as a defendant to another who may have been injured by the agent's negligence."

While plaintiff does not seriously dispute the existing rule, he argues that the rule is unjust and ought to be abandoned. There is much merit in his position. In Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, we held the negligence of a bailee was not to be imputed to a bailor in an action by the plaintiff-bailor against a third party to recover damages for personal injuries, even though under our Financial Responsibility Act, Minn. St. 170.54, the bailor would be liable to a third party injured by the negligence of the bailee.[1]

The whole doctrine of imputed negligence probably had its inception in an "unfortunate"[2] English decision, Thorogood v. Bryan [1849] 8 C. B. 115, 137 Eng. Rep. 452, holding that the negligence of an omnibus driver was imputed to a passenger precluding the right of the passenger to recover for injuries caused by the negligent operation of another vehicle. That decision met with little favor in this country and was likewise subsequently repudiated in England. Many of the cases refusing to follow Thorogood are collected in Little v. Hackett, 116 U. S. 366, 371, 6 S. Ct. 391, 393, 29 L. ed. 652, 654, where the court said:

"That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the

---

[1] See, also, Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, 11 A. L. R. (2d) 1429; Ristau v. Riley, 230 Minn. 341, 41 N. W. (2d) 772; Rogge v. G. N. Ry. Co. 233 Minn. 255, 47 N. W. (2d) 475; Prosser, Torts (3 ed.) §§ 68 to 73; Restatement, Torts (2d) § 489.

[2] Prosser, Torts (3 ed.) § 73, p. 502.

wrong. It would seem that the converse of this doctrine should be accepted as sound—that when one has been injured by the wrongful act of another, to which he has in no respect contributed, he should be entitled to compensation in damages from the wrong-doer. And such is the generally received doctrine, unless a contributory cause of the injury has been the negligence or fault of some person towards whom he sustains the relation of superior or master, in which case the negligence is imputed to him, though he may not have personally participated in or had knowledge of it; and he must bear the consequences."

From that statement and others like it the rule has evolved that where a certain relationship exists between parties, such as master and servant, the negligence of the one, that is, the servant, is imputed to the master barring his right of recovery even though he is completely innocent of any fault. If negligence is based on fault, it is difficult to rationalize imputed negligence where the party seeking recovery is without fault. Many of the reasons for imputing negligence of a servant to a master in a suit by an injured third party—that is, making the master vicariously liable to the injured third party—are discussed in Prosser, Torts (3 ed.) § 68. It would serve no useful purpose to elaborate on them here. Probably the most popular reason is to provide the injured person with a "deep pocket." In other words, vicarious liability is attached to the master-servant relationship, providing the injured person with a defendant who in all likelihood can respond in damages if he establishes a right thereto. There may be some justification for the rule of vicarious liability even though the master is without fault; but from vicarious liability has come the companion rule imputing to the master the negligence of the servant when the master seeks to recover for his own damage and injury, even though the master was not at fault. There is no necessity for creating a solvent defendant in that situation, nor can any of the reasons given for holding a master vicariously liable in a suit by third persons be defended on any rational ground when applied to imputing negligence of a servant to a faultless master who seeks recovery from a third person for his own injury or damage. Why should the negligent third person escape lia-

bility under these circumstances? Here the logic, if there is any, for imputing negligence to a faultless plaintiff in a suit by him against a third party is completely lacking. Yet, regardless of the illogic of the rule, it has been universally accepted in this country.

This rule has become known as the both-ways rule.[3] It has come under increasing criticism in recent years. Originally the contributory negligence of a bailee was imputed to a bailor the same as the contributory negligence of a servant was imputed to a master.[4] Many of the courts throughout the country have repudiated this doctrine long ago. We did so in Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, which was followed in Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, 11 A. L. R. (2d) 1429. There are other equally inconsistent applications of the rule. For instance, the negligence of the servant is not imputed to the master in a suit by the master against the servant, but when he sues a third-party joint tortfeasor, he is barred from recovery from such third party. In the case of a joint enterprise, the negligence of one of those so engaged is imputed to all in a suit against a third person[5] but not in a suit inter se. Berlin v. Koblas, 183 Minn. 278, 236 N. W. 307; Murphy v. Keating, 204 Minn. 269, 283 N. W. 389, 23 Minn. L. Rev. 666.

From an examination of the authorities there is just no way to rationalize the rule of imputed contributory negligence. As we said in the Christensen case, involving our Financial Responsibility Act, Minn. St. 170.54, in holding that the contributory negligence of a bailee would not be imputed to a bailor (215 Minn. 413, 10 N. W. [2d] 417, 147 A. L. R. 958):

"The very reason for holding the consenting owner liable for negligence of the operator of his automobile, that of furnishing financial responsibility to an injured party, is completely absent in the owner's

---

[3] The term was probably coined by Gregory, *Vicarious Responsibility and Contributory Negligence,* 41 Yale L. J. 831.

[4] See, Prosser, Torts (3 ed.) § 73, p. 504; 14 La. L. Rev. 348.

[5] See criticism of this rule in Prosser, Torts (3 ed.) § 71, p. 494.

action to recover for damages sustained by him as a result of the concurrent negligence of the operator and the third party. Therefore, it is a *non sequitur* to say that, because the policy of the statute [Minn. St. 170.54] is to impose liability against the bailor, it also is its policy to impute to him the contributory negligence of his bailee."

While we there dealt with our Financial Responsibility Act, the above language applies as well to a rule imputing contributory negligence of a servant to a faultless master simply because he is master.

The original Restatement, Torts, adopted the both-ways test where a master-servant relationship exists, and also included imputed negligence in several other relationships. Section 485 read:

"Except as stated in §§ 493 and 494,[6] a plaintiff is barred from recovery by the negligent act or omission of a third person if, but only if, the relation between them is such that the plaintiff would be liable as defendant for harm caused to others by such negligent conduct of the third person."

Section 486 of the original Restatement specifically adopted the both-ways test where a master-servant relationship exists. It read:

"A master is barred from recovery against a negligent defendant by the contributory negligence of his servant acting within the scope of his employment."

In the adoption of the new Restatement, Torts (2d), imputed negligence was abandoned as to many of the relationships where it originally applied. Section 485 now reads:

"Except as stated in §§ 486, 491, and 494, a plaintiff is not barred from recovery by the negligent act or omission of a third person."

In the Comment to the new Restatement § 485 we find the following:

"The rule stated in this Section rejects, except as indicated by the reference to other Sections, the doctrine of 'imputed contributory negligence,' under which the plaintiff is barred from recovery against the

---

[6] Neither of these sections has any applicability here.

defendant because the negligence of a third person, with whom the plaintiff stands in some relation, has contributed to his harm." [7]

However, with respect to § 486 the rule remains the same.

In areas where vicarious liability did not apply, § 495 of the original Restatement provided:

"A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff

"(a) has the ability to control the conduct of the third person, and

"(b) knows or has reason to know that he has such ability, and

"(c) knows or should know

"(i) that it is necessary to exercise his control, and

"(ii) that he has an opportunity to do so, and

"(d) fails to utilize such opportunity with reasonable care."

In the new draft § 495 reads:

"A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff has been negligent in failing to control the conduct of such person."

Had § 495 in the original draft been adopted in cases involving the master-servant relationship and others where contributory negligence is imputed to a faultless plaintiff it would have been more in harmony with our concept of negligence based on fault. In view of the fact that imputed negligence has now been abandoned in Restatement, Torts (2d) as to relationships where it formerly applied, it is difficult to find any tenable reason why it should be retained in a master-servant relationship where the master is entirely without fault.

The whole problem of imputed contributory negligence needs re-examination. In automobile accident cases it is doubtful if the both-ways test, or any test creating a bar to recovery by a person vicariously liable, is now necessary in this state. Our Financial Responsibility Act makes the owner of any automobile liable for the negligence of the

---

[7] See balance of Comment for a discussion of some of the areas in which the doctrine of imputed negligence has been abandoned.

operator using it with the owner's consent.[8] Conceivably an agent or servant might be using an automobile of his own in his master's business and the master be vicariously liable for the negligence of the servant while so engaged in the scope of his business; but except in a case of that kind the master under our Financial Responsibility Act would be liable for the negligence of the servant if engaged in the scope of his business, without the rule of imputed negligence. Minnesota, in the Christensen and Jacobsen cases, as mentioned above, is one of the few states where the logic of the both-ways test has been analyzed in the light of our Financial Responsibility Act. For discussions pertaining to the unsoundness of the rule of imputed contributory negligence, see Gregory, *Vicarious Responsibility and Contributory Negligence,* 41 Yale L. J. 831; Fleming, *Imputed Contributory Negligence,* 14 La. L. Rev. 340; Henniss, *Imputed Contributory Negligence,* 26 Tenn. L. Rev. 531; Note, 1 Willamette L. J. 528; 40 U. of Detroit L. J. 268. See, also, 2 Harper & James, Law of Torts, c. 23; Prosser, Torts (3 ed.) § 68; 65 C. J. S., Negligence, § 168, p. 831.

Application of the rule imputing contributory negligence of a servant to a master in a suit by the master to recover against a negligent third party, when the master is not present in the car at all, is hard to justify on any theory. When the master is present as a passenger, as he was in the case before us, there may be some chance that he could exercise his theoretic control over the operation of the car if he saw fit to do so. But even here, unless it can be shown that he actually tried to take over manual operation of the vehicle, what chance does he have to exercise this right? As the court aptly stated in Jenks v. Veeder Contracting Co. Inc. 177 Misc. 240, 243, 30 N. Y. S. (2d) 278, 281, affirmed, 264 App. Div. 979, 37 N. Y. S. (2d) 230, appeal dismissed, 289 N. Y. 787, 46 N. E. (2d) 848:

"Parties having equal legal title to a motor vehicle cannot be permitted to contend for the wheel in moving traffic and hence the imputation of negligence to the joint owner present upon the theory of equal

---

[8] See, 2 Harper & James, Law of Torts, § 23.6.

legal right to domination or control is untenable when applied to the facts of this case.

"The realities of the actual operation of vehicles on highways cannot be entirely overlooked in dealing with the rights and obligations of those present with the driver."

We can think of nothing more dangerous in these days of congested travel on high-speed highways than to permit a master riding as a passenger in a car driven by his servant constantly to interfere with the servant's driving, or his attempt to exercise a theoretic right of control. To do so would be the clearest evidence of active negligence on the part of the master, for which he would be chargeable without imputing to him the negligence of his servant.[9] Imputed negligence, on the other hand, presupposes that the master is innocent of any fault.[10] How, then, can we reconcile the theory of right to control, the exercise of which would charge the master with negligence and imputed negligence based on the theory that he is free from any fault? The two just do not hang together.

We are convinced the time has come to discard this rule which is defensible only on the grounds of its antiquity. In doing so we realize we may stand alone, but a doctrine so untenable should not be followed so as to bar recovery of one entitled to damages. We limit this decision to automobile negligence cases. There may be other situations where the same result should follow, but we leave those decisions for the future as they come before us. We also limit the retrospective effect of the decision to this case so as not to impose unjustly liability on defendants who have relied on the rule without notice of a departure from it. In view of the fact that the matter has been brought before us by this appeal, it would be unjust not to apply the rule to those involved here.

■ After the trial plaintiff obtained an affidavit from the lone dissenting juror, one Lyn Owens, in which he charged other jurors with various acts of misconduct, both during their deliberations and out-

---

[9] See Prosser, Torts (3 ed.) § 72, discussing the same question with respect to those engaged in joint enterprise.

[10] 2 Harper & James, Law of Torts, § 23.6.

side the jury room. The charges made may be briefly summarized as follows:

(1) That even though the jurors answered in the negative when asked on voir dire examination whether they knew plaintiff or knew any reason why they would be prejudiced against the plaintiff in the case, two of the jurors in the jury room indicated that they knew the Weber family and that the "boys were always having their hands out" and that they had no confidence whatsoever in plaintiff because he was one of the brothers and the same kind of fellow as they were; and that they immediately argued against plaintiff and did not base their arguments on the facts brought out in the evidence, but instead upon their prejudice toward the Weber family.

(2) That a number of jurors had worked for defendant and apparently planned to work for it again and had the idea that if they held against defendant it might interfere with their future employment; and that these jurors were prejudiced in favor of defendant even though they had answered on the voir dire examination that their employment would not influence their verdict.

(3) That the jurors did not base their verdict on physical facts as demonstrated by the evidence but instead based it on their prejudice against the plaintiff.

(4) That while affiant was having dinner in a restaurant with the jury, one of the jurors was having dinner with a nonjuror friend; and he heard one of them say that just by looking at the driver of the Weber truck it was apparent that he did not know enough to know how to drive a truck; that affiant advised them that it was improper to talk about the case and heard no further conversation along that line.

(5) That during the trial Musser, defendant's employee, approached the affiant and started to talk about the case, whereupon the bailiff told him that it was improper to talk to the jurors or they would have a mistrial. Affiant stated that he did not know whether Musser attempted to talk to other jurors.

(6) That affiant was of the opinion that two of the jurors were definitely prejudiced in favor of defendant, and that several times dur-

ing the discussion and deliberation of the jury they indicated their prejudice.

Counteraffidavits were procured by defendant from the three jurors charged with misconduct. Thereafter the court, in denying the motion for a new trial, stated in a memorandum that he had considered the affidavits and that the verdict should not be overturned on account of the alleged misconduct.

Some of the charges made in the affidavit of Owens relate to misconduct in the jury room. We follow the rule that affidavits of jurors relating to conduct in the jury room may not be used to impeach their verdict. 14 Dunnell, Dig. (3 ed.) § 7109. The rule is probably as well stated in Hurlburt v. Leachman, 126 Minn. 180, 183, 148 N. W. 51, 52, as anywhere. We there said:

"It has always been deemed essential to the integrity and efficiency of the jury system, that the jurors should retire and consult together in secret, unhindered and uninfluenced by any fear that their doings, while deliberating, were liable to be called in question elsewhere, or to be spread before the public; and that they should be permitted to conduct their deliberations in their own way free from any outside control or interference. To this end it has been the policy of the law, at least in modern times, to bar inquiry as to what took place during their deliberations; to keep them under surveillance only to the extent necessary to guard them against improper influences; and to take note of their conduct only for the purpose of determining whether they have violated their oaths and duties as jurors. Even improper conduct, if it occur during their deliberations, cannot be shown by the testimony of the jurors themselves."

As to the improper conduct charged against jurors outside the jury room, plaintiff relies upon State, by Lord, v. Hayden Miller Co. 263 Minn. 29, 116 N. W. (2d) 535, and Schwartz v. Minneapolis Suburban Bus Co. 258 Minn. 325, 104 N. W. (2d) 301. In the Hayden Miller case there was evidence that one juror and possibly two had concealed bias on the voir dire examination, and at least one other juror had visited the property in question during the lawsuit to make

an examination of it. The state's attorney asked for a continuance so that the jurors might be examined in the presence of both counsel and the court but the request was denied by the court, who did consider the matter on statements of investigation by the state's attorney. We granted a new trial on other grounds, but stated that we felt it was error to deny the continuance requested by the state's attorney to enable full inquiry to be made.

In the Schwartz case we indicated our disapproval of the practice of interviewing jurors where it was indicated in post-trial discovery that a member of the juror's family had been involved in another accident which was not revealed on the voir dire examination.

We again condemn the practice of harassing jurors by procuring affidavits from them after the trial to impeach the verdict. If information comes to light indicating misconduct, which if established would likely lead to a new trial, the procedure we outlined in Schwartz should be followed. This would preserve the right of a juror to be unmolested after verdict, and a record could be made of what he might say under proper protection which can be properly reviewed by this court on appeal. While that was not done here, it is apparent the court considered the counteraffidavits of the jurors charged with misconduct and concluded that misconduct had not been established so as to warrant a new trial. We are content to leave it there.

Reversed and new trial granted. No costs or disbursements to either party.