(No. 51635.—

PATRICIA BAUER, Appellee, v. GLENN A. JOHNSON Appellant.

*Opinion filed March 28, 1980.*

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, of counsel), for appellant.

Lucaccioni & Glickstein, of Chicago (Joel S. Ostrow, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The defendant, Glenn Johnson, was found not liable by a Cook County jury for injuries received by the plain-

tiff, Patricia Bauer, in an automobile collision. The jury answered a special interrogatory finding the plaintiff contributorially negligent. Plaintiff owned the car in which she was riding. It was driven by her 16-year-old son at the time of the collision. The trial court denied plaintiff's motion for a directed verdict on the issue of her contributory negligence and plaintiff's post-trial motion for judgment notwithstanding the verdict. The appellate court reversed and remanded. (67 Ill. App. 3d 146.) We affirm.

The facts are well stated in the appellate court opinion and can be summarized briefly here. Robert Bauer, the plaintiff's 16-year-old son, testified that he was a licensed driver of two months' standing. He said that on the day of the accident, March 24, 1971, he was driving south in a parking aisle at a maximum speed of 20 miles per hour from a post office in the Randhurst shopping center toward a "T" intersection located 200 feet south. The roadway at the intersection connected all of the parking aisles. No traffic-control devices were present. When he was approximately 100 feet from the intersection, he decelerated and looked to his left in preparation for making a left turn. At that time he saw the defendant's vehicle 500 feet away traveling westerly toward him. He thought a vehicle that far away traveling within the speed limit presented no risk to him. He said the posted speed limit was 25 miles per hour. Approximately 50 feet from the intersection, his mother shouted at him to stop the car. He said his car traveled another 20 feet as he began to brake, reasonably hard at first and then harder as he focused on the defendant's car and heard its tires squeal. He also tried to swerve to his right. His car came to a stop seven feet into the intersection and then was hit by defendant's vehicle.

Plaintiff testified that she was sitting in the passenger seat facing southeast, paying no particular attention to the way her son drove. When they were about 50 feet from

the intersection, she noticed defendant's car traveling, she said, at a high rate of speed. She then yelled for her son to stop. Their car traveled between 12 and 15 feet, then quickly slowed and stopped in the intersection just before impact.

The defendant was called as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) and testified that he looked in plaintiff's direction 1,000, 600, 500 and between 150 and 200 feet before he reached the intersection and saw nothing. When he was 30 feet from the intersection, he said that the plaintiff's vehicle was also 30 feet away. He said he was traveling 30 miles per hour and that plaintiff's car was going 20 to 25 miles per hour. He applied his brakes and skidded 20 feet prior to impact. He did not attempt to swerve his car. He said that plaintiff's vehicle was going 5 to 10 miles per hour at the moment of impact.

Each witness agreed that the collision took place at approximately 5:30 p.m., that the day was bright and clear and that there was nothing to obstruct the drivers' or passenger's view. Plaintiff's son testified that a police officer paced off nine steps as the length of the skid marks left by defendant's car. No marks were left by plaintiff's car.

According to the pictures in evidence and the testimony submitted, the collision took place completely on the private property of the shopping center. Apparently for this reason, neither plaintiff nor defendant has argued the applicability of the Illinois Rules of the Road (Ill. Rev. Stat. 1971, ch. 95½, par. 11–100 *et seq.*, par. 11–901(a), 11–906) and we do not pursue this matter further.

Defendant argues that plaintiff breached her duty to control the driver and her duty to warn the driver of danger. No allegations of a master-servant, principal-agent or joint enterprise relationship were made. In

Illinois the duty of an owner-passenger to control the driver was set forth by *Palmer v. Miller* (1942), 380 Ill. 256, 259. There this court held that an owner-passenger could be liable for the negligence of a driver if the passenger negligently failed to control the driver.

*Palmer* also was ahead of its time in abolishing the now discredited imputed-negligence doctrine. A brief explanation of this doctrine is helpful to an understanding of the issue involved in the *Palmer* case and in this appeal. The doctrine originally was designed to provide a financially responsible defendant to victims of the driver's negligence. (Prosser, Torts sec. 73 (4th ed. 1971).) It was soon applied, however, to bar plaintiffs from recovery due to their imputed contributory negligence. Prosser, Torts sec. 74 (4th ed. 1971).

The right of an owner to control the vehicle was the basis for the doctrine. And in the days of the horse and buggy, it was possible for an owner-passenger to exercise a degree of control over the driver. Traffic was light, the speed was slow and the reins could be taken from the driver with relative ease. Thus, passenger control over the physical details of driving was a realistic possibility. See the discussion in *Kalechman v. Drew Auto Rental, Inc.* (1973), 33 N.Y.2d 397, 403, 353 N.Y.S.2d 414, 418, 308 N.E.2d 886, 889, and the discussion of *Wheatley v. Patrick* (Eng. 1837), 2 M. & W. 650, in Harper & Kime, *The Duty to Control the Conduct of Another,* 43 Yale L.J. 886, 889 (1934).

Recent cases, however, have criticized the imputed-contributory-negligence doctrine and the theory on which it is premised. (See *Weber v. Stokely-Van Camp, Inc.* (1966), 274 Minn. 482, 144 N.W.2d 540.) These cases have recognized the danger of permitting a passenger to interfere with a driver while he or she was operating the vehicle. (See *Weber v. Stokely-Van Camp, Inc.* (1966), 274 Minn. 482, 491, 144 N.W.2d 540, 545.) Thus, in

*Kalechman v. Drew Auto Rental, Inc.* (1973), 33 N.Y.2d 397, 402-03, 353 N.Y.S.2d 414, 418, 308 N.E.2d 886, 889, the New York Court of Appeals stated:

"With the advent of the modern automobile there is no longer any basis for assuming that the passenger, no matter what his relationship to the driver may be, has the capacity to assert control over or direct the operation of a moving automobile. The design of the vehicle, the high speeds at which it travels, the split second timing which is often necessary to avoid collision have all combined to erode the assumption that anyone other than the driver can effectively control the operation of the vehicle in traffic.

In fact, under modern driving conditions anyone who 'allows another to drive would only increase the risk of accidents by interfering with the driver's control of the car or by diverting his attention' [citation].

*** All this serves to illustrate the wisdom of Cardozo's celebrated observation that 'Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day.' [Citation.]"

Other courts also have criticized the doctrine for its failure to recognize that, in an ordinary situation, the probable understanding of an owner-passenger and the driver is that the driver alone exercises control over the physical details of driving. *Smalich v. Westfall* (1970), 440 Pa. 409, 416, 269 A.2d 476, 481-82; see also *Cole v. Woods* (Tenn. 1977), 548 S.W.2d 640.

Thus, *Palmer* anticipated these criticisms in holding that an owner-passenger was only liable for his or her own negligence in failing to control negligent conduct of a driver. *Palmer* was affirmed again by this court in *Summers v. Summers* (1968), 40 Ill. 2d 338. Defendant relies

primarily upon the holding in *Palmer* that an owner-passenger has a duty to control the driver. The scope of this duty is the primary issue on appeal.

The mere presence of an owner-passenger in the vehicle does not impose the duty to control. Thus, the *Palmer* court stated that liability attaches only if the owner-passenger "negligently fails to properly control the driver." (380 Ill. 256, 260.) Four cases were cited by *Palmer* as descriptive of the duty to control. In each of these cases the passengers knew or should have known that it was essential for their safety or the safety of a third person to control the conduct of the driver. (See *Wheeler v. Darmochwat* (1932), 282 Mass. 553, 183 N.E. 55; *Powers v. State* (1940), 178 Md. 23, 11 A.2d 909; *Daggy v. Miller* (1917), 180 Iowa 1146, 162 N.W. 854; *Rodgers v. Saxton* (1932), 305 Pa. 479, 158 A. 166.) The latter case contains this important statement: "Ownership of a car does not necessarily mean control of that car, any more than ownership of any other property necessarily means control of it." (305 Pa. 479, 485, 158 A. 166, 168.) The court went on to say that when possible dangers are manifested to any passenger, owner or nonowner, with an adequate opportunity to control the situation, he will be barred from recovery if he sits by without protest and permits himself to be driven on to his injury.

The preferred basis of contributory negligence in these situations, as the *Rodgers* court stated, rests upon a *negligent* failure to control the conduct of the driver. The Restatement (Second) of Torts sec. 495 (1965), has reached similar conclusions: "A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff has been negligent in failing to control the conduct of such person." The vast majority of cases purporting to apply the *Palmer* principle have also involved a negligent failure to control negligent conduct. Crucial to these cases were

foreseeable risks like, for example, the driver's excessive speed (*Coakley v. Nichols* (1972), 8 Ill. App. 3d 973, 976; *Wassmann v. Ritchason* (1978), 63 Ill. App. 3d 770) or intoxication (*Kitch v. Adkins* (1952), 346 Ill. App. 342, 344), out-of-the-ordinary road conditions (*Koch v. Lemmerman* (1956), 12 Ill. App. 2d 237, 241; *Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, 466, 471) or the known fact that the automobile operator lacked a driver's license (*Hodge v. Bzdon* (1975), 33 Ill. App. 3d 192). In such cases, if no reasonable precautionary measures were taken by the passenger, a finding of contributory negligence would be appropriate.

The defendant argues that the plaintiff's opportunity to observe the risk, without more, should give rise to a duty to take added precautions. Passengers, however, normally trust the driver to operate the vehicle unless there is some reason to be conscious of his or her lack of care; there is no duty to keep a lookout or to warn when the driver is exercising due care and is aware of conditions presenting a risk. *Zank v. Chicago, Rock Island & Pacific R.R. Co.* (1959), 17 Ill. 2d 473, 482-84. See the discussion in Restatement (Second) of Torts sec. 495, comment *c* (1965).

The defendant also argues that in today's traffic conditions there is "an even greater need for a second pair of eyes scanning the roadway" and that this is especially true when the driver is newly licensed. This argument is overbroad. One is permitted to drive an automobile alone upon obtaining a license. One pair of eyes scanning the roadway has been deemed sufficient in this State. Exceptions to this in the contributory negligence context rest upon a foreseeable risk to the passenger beyond that normally attending the safe operation of a vehicle or upon a special arrangement made between the driver and passenger regarding the vehicle's operation.

In sum, a plaintiff passenger in a vehicle will be barred from recovery if the negligence of the driver is a legally contributing cause of harm and if the plaintiff was negligent in failing to control the conduct of the driver. The passenger's ownership of the car is relevant only insofar as it is a circumstance which gives the passenger reason to believe that his or her advice, directions or warnings would be heeded. (Restatement (Second) of Torts sec. 495, comment *e* (1965).) But no passenger has a duty to keep a lookout or to control the driver unless the plaintiff knows or should know that such actions are essential to his or her safety. Restatement (Second) of Torts sec. 495, comments *c* and *d* (1965).

In view of the foregoing, the appropriate inquiry in this case is whether, considering all of the evidence in an aspect most favorable to the defendant, a verdict of contributory negligence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) We do not think there was sufficient evidence of contributory negligence in this case. There was no evidence of road conditions requiring plaintiff's assistance in driving the vehicle. There was no evidence of driver incompetence until it was clear or would be clear to a reasonable person that the driver on that day would not take the actions necessary to avoid the collision with the defendant. Such a conclusion was only possible in this case when the other vehicle was observed and the split-second calculation was made that it was likely to strike plaintiff's vehicle and that the driver would take inadequate measures to avoid the collision. From the uncontroverted testimony, plaintiff made this calculation rapidly upon the observation of the defendant's vehicle. Moreover, it is highly unlikely that the plaintiff, even if the other vehicle were observed sooner, could have reasonably known earlier that her son would take inadequate measures to avoid the vehicle. Plaintiff had seen her son look to his left and slow down

while the intersection was 100 feet away. She could reasonably assume that her son would use reasonable care in reacting to risks presented from that direction. The uncontroverted evidence also shows that as soon as the risk was observed, she took reasonable action to prevent a collision. Defendant makes no argument that yelling "stop" to her son itself was negligent or caused her son to take an action leading to the impact which he would not otherwise have taken.

For these reasons, we agree with the appellate court that no "substantial factual dispute" was left to be resolved by the jury on this issue. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504.) *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, a case in which this court held that a jury question was presented on the contributory negligence issue, is inapposite. There the road conditions were poor and the jury could have inferred that the driver was speeding and that a prudent passenger would not go to sleep or neglect further precautions under those circumstances. Here, there is no evidence from which a jury could have inferred that precautions beyond those taken were necessary. Therefore, the trial court should have granted the plaintiff's motion for a directed verdict on the contributory negligence issue. The judgment of the appellate court to this effect is affirmed and the cause is remanded for a new trial consistent with this decision.

*Affirmed and remanded.*