660 P.2d 464

**McCoy REED, Plaintiff-Appellant,**

v.

**Edward John HINDERLAND; Epic Extruded Plastics, Inc., an Arizona corporation, Defendants-Appellees.**

No. 15827.

Supreme Court of Arizona, In Division.

Feb. 22, 1983.

David M. Berman, Phoenix, for plaintiff-appellant.

Robbins & Green, by Michael J. O'Grady, Phoenix, for defendants-appellees.

HOLOHAN, Chief Justice.

This action arose out of an accident between a truck, owned by appellee Epic Extruded Plastics, Inc. [Epic] and driven by appellee Edward Hinderland, and an automobile owned by appellant McCoy Reed and driven by his son, Arlen Reed. Appellant suffered severe physical injuries. The jury returned a verdict for the defendants and judgment was entered accordingly. After his motion for new trial was denied, appellant brought this appeal, which was transferred to this court pursuant to rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S. We reverse the trial court's judgment and remand for a new trial.

## FAILURE TO PLEAD IMPUTED CONTRIBUTORY NEGLIGENCE

Appellant's complaint alleged that the accident was caused by appellee Hinderland's negligence and that Hinderland was driving the truck in furtherance of Epic's business. Appellees' answer denied all negligence and alleged as an affirmative defense "contributory negligence on the part of the plaintiff." Both sides served interrogatories and filed answers thereto. The parties also filed a joint pretrial statement which listed "the contributory negligence of plaintiff" among the contested facts. Almost eleven months after the pretrial statement was filed and one week before trial began, appellees filed a trial memorandum which stated in part:

> If the jury finds that Arlen Reed was negligent, and that such negligence was a cause of the accident . . ., the jury should be further instructed that such negligence should be imputed to McCoy Reed as the owner of the automobile which was being driven by Arlen Reed.

At trial, appellees requested that the jury be so instructed. Appellant objected that appellees' answer failed to plead the affirmative defense of imputed contributory negligence. The answer merely alleged that appellant was personally negligent; it did not allege that any agency relationship existed between Arlen Reed and appellant which would justify imputing Arlen's negligence to appellant, as required by rule 8(d), Arizona Rules of Civil Procedure, 16 A.R.S. An affirmative defense must be both pleaded and proven. *Lakin Cattle Co. v. Engelthaler,* 101 Ariz. 282, 419 P.2d 66 (1966). Appellant urged that since appellees failed to plead imputed contributory negligence, the matter was not properly at issue in the case.

We agree that the defense of imputed contributory negligence should have been specifically pleaded. Appellees' argument, that the answer was sufficient to raise the issue if construed as being based upon appellant's own negligence, misses the point. While the answer was certainly sufficient to alert appellant that his own negligence was alleged, that was not the theory upon which appellees tried the case. There was no evidence that appellant personally did or failed to do anything which caused the accident. It is evident that the defense of the case was based on the theory that evidence of the driver's negligence was imputed to the passenger-owner.

The great weight of authority holds that the affirmative defense of imputed contributory negligence must be specially pleaded. *Carroll v. Beavers,* 126 Cal.App.2d 828, 273 P.2d 56, 59 A.L.R.2d 263 (1954); *Gervais v. Kostin,* 48 Wis.2d 190, 179 N.W.2d 828 (1970); *See also Siemes v. Englehard,* 346 S.W.2d 560 (Mo.App.1961); *Groff v. Circle K Corp.,* 86 N.M. 531, 525 P.2d 891 (App. 1974); *Annot.,* 59 A.L.R.2d 273 (1958) and cases therein.

"The appellants' claim of imputed negligence cannot be sustained, since agency and the imputed negligence resulting therefrom is an affirmative defense and must be pleaded or deemed waived." *Gervais v. Kostin,* 48 Wis.2d at 200, 179 N.W.2d at 834.

It is true that appellant could have determined appellees' actual theory by using interrogatories, but that fact does not alter appellees' burden of raising the affirmative defense. Appellees failed to allege in their answer any legal theory why any negligence of Arlen Reed should be imputed to appellant. *Cf. Williamson v.*

*Varner,* 252 N.C. 446, 114 S.E.2d 92 (1960), in which allegations both that the driver was negligent and that the driver was the agent of the car owner were found to be sufficient to raise the issue of imputed contributory negligence. Appellees also failed to move to amend their answer to conform to their theory. Since appellant objected to the arguments and instructions, the issue was not tried by express or implied consent. *See Smith v. Continental Bank,* 130 Ariz. 320, 636 P.2d 98 (1981); *Hall v. Delvat,* 95 Ariz. 286, 389 P.2d 692 (1964). Although pleadings are to be liberally construed, we hold that the answer which merely alleged "contributory negligence ... of the plaintiff" cannot be construed to allow, over objection, admission of evidence or jury instructions on imputed contributory negligence.

## ADMISSION OF APPELLANT'S COUNSEL'S LETTER

For the guidance of the court on retrial, we will consider certain other issues raised by the parties. First, appellant complains that a letter from his attorney to his insurance company should not have been admitted into evidence. The letter read in part: "An accident ensued being proximately caused by the negligent driving of Arlen Reed." Appellant objected when questioned about the attorney's statement; nevertheless, the letter was admitted into evidence. Appellant testified that he had never told anyone, including his attorney, that his son, Arlen, was at fault, and that he did not remember signing a release form or receiving any money. The defense offered into evidence a release form signed by appellant acknowledging receipt of a sum of money from his insurance company. The release was admitted over appellant's objection.

Appellees' theory for admitting the letter was that it was an admission against interest made on appellant's behalf by an agent authorized to make statements about the matter. The letter also rebutted appellant's claim at trial that Hinderland's negligence caused the accident. The release form was said to be evidence impeaching appellant's claim that he did not remember signing a release or receiving money as a result of his attorney's efforts.

■ We find that the letter and release were properly admitted for the legitimate purpose of attacking the credibility of appellant's testimony as to the cause of the accident. Because appellant's attorney was employed as his agent to deal with the insurance company upon this very issue, the attorney's statements bind appellant as the principal. As stated by J. Augustus Hand in *Slifka v. Johnson,* 161 F.2d 467, 469 (2d Cir.) *cert. denied,* 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344 (1947), in which statements made by a broker were held to be admissible:

> The broker was authorized to arrange for the settlements with the companies.... We hold that the evidence objected to was competent.... [citations omitted] It would be strange to have a rule of agency binding a principal to unauthorized acts of an agent, when done within the apparent scope of his authority, and yet to adopt a rule of evidence which would exclude statements naturally made in the course of the agency.

*Buehman v. Smelker,* 50 Ariz. 18, 68 P.2d 946 (1937) is distinguishable because the attorney in *Buehman* made errors of fact (about the directions in which the cars were traveling) in a pleading. The letter here is not a pleading, and the statement is a legal conclusion upon a matter directly within the scope of counsel's agency.

■ Of course, the letter is not a solemn judicial admission. It is rather what Wigmore calls a "quasi admission," which is "nothing but an item of evidence" and "is therefore *not in any sense final or conclusive.*" 4 Wigmore, Evidence § 1059 at 27 (Chadbourn rev. 1972) [emphasis in original]. When such a statement is offered into evidence the witness must be given the opportunity to explain or deny the statement. "This may involve the showing of a mistake, or the evidencing of circumstances which suggest a different significance to the words." *Id.* at 30–31. The trier of fact

then determines what significance the statement has. As appellant was properly allowed to testify that the statement was unauthorized, we believe that the letter and release form were properly admitted.

## IMPUTATION OF DRIVER'S CONTRIBUTORY NEGLIGENCE TO OWNER-PASSENGER

Appellees sought to have the trial court rule as a matter of law that the negligence, if any, of appellant's son should be imputed to appellant, based upon either the family purpose doctrine, or, alternatively, upon an agency relationship. The court ruled that the family purpose doctrine was inapplicable, but it ruled any negligence of appellant's son would be imputed to appellant based upon a principal-agent relationship. The court then gave appellees' requested jury instructions to that effect.

Appellant objected to the giving of these instructions upon three grounds: First, appellees failed to plead imputed contributory negligence; second, the facts presented at trial failed to establish a principal-agent relationship as a matter of law; and third, the negligence of an agent who is not a servant is not imputed to his principal who is not his master.

The first of these objections has been discussed above. Because the same issues will arise on retrial, and the pleadings can be amended to raise the issue properly, we will also consider the other objections raised.

Appellant argues that the existence of an agency relationship is ordinarily a question for the trier of fact, *Corral v. Fidelity Bankers Life Ins. Co.,* 129 Ariz. 323, 630 P.2d 1055 (App.1981), although the question may be one of law for the court when the material facts from which agency is to be inferred are undisputed. *Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 626 P.2d 602 (App.1981). *Cf. Hoeft v. Fridel,* 70 Wis.2d 1022, 235 N.W.2d 918 (1975). A party asserting the existence of an agency relationship bears the burden of proving it. *Salt River Valley Water Users' Ass'n. v. Giglio,* 113 Ariz. 190, 549 P.2d 162 (1976).

Appellees respond that "proof or admission of ownership is *prima facie* evidence that the driver of a vehicle causing damage by its negligent operation is the servant or agent of the owner," *Silva v. Traver,* 63 Ariz. 364, 367, 162 P.2d 615, 616–17 (1945). However, the presumption vanishes when any evidence to the contrary is presented. The weight of authority holds that the presence of an owner in his motor vehicle driven by another creates a rebuttable presumption or inference that a principal-agent or master-servant relationship exists between owner and driver. *Ross v. Burgan,* 163 Ohio St. 211, 126 N.E.2d 592 (1955); *See also Stober v. Halsey,* 101 Cal. App.2d 801, 226 P.2d 44 (1951); *Annot.,* 50 A.L.R.2d 1281 (1956). Restatement (Second) of Agency § 317, Comment a, Illustration 1 (1958). The contributory negligence of an agent bars the principal from recovery from a third party. Restatement (Second) of Agency, § 317 (1958). Appellees contend that appellant failed to rebut this presumption of agency and that the trial court properly instructed the jury.

Appellees cite numerous cases holding that when a car owner is riding as a passenger in his car, the owner-passenger retains the right to control the operation of the vehicle and is thus chargeable with the driver's negligence in an action against third parties. It is the existence of the right to control, not its exercise, which is determinative. *Hawthorne v. Lawkes,* 58 Tenn.App. 397, 430 S.W.2d 803 (1968); *Estate of Whistler v. Shoemaker,* 502 S.W.2d 237 (Tex.Civ.App.1973); *Red Ball Motor Freight, Inc. v. Aranspiger,* 449 S.W.2d 132 (Tex.Civ.App.1969); *Pagarian v. Phillips Petroleum Co.,* 16 Wash.App. 34, 552 P.2d 1065 (1976); *See Ross v. Burgan, supra; Laan v. Miller,* 316 P.2d 167 (Okl.1957); *Price v. Sommermeyer,* 41 Colo.App. 147, 584 P.2d 1220 (1978).

Appellant argues the basis for the rule is a fiction which has outlived its usefulness. One of the first cases to break from the majority rule was *Weber v. Stokely—Van-Camp, Inc.,* 274 Minn. 482, 144 N.W.2d 540

(1966). That case set out the historical development of the doctrine of imputed negligence. The negligence of a servant is imputed to the master in a suit by an injured third party largely, "to provide the injured person with a 'deep pocket,'" *id.* at 486, 144 N.W.2d at 542—i.e., to provide a financially responsible defendant. From this rule, however, came the companion rule imputing contributory negligence of the servant to the master to bar the master's action. This, the so-called "both-ways rule," does not withstand logical analysis. *See generally,* F. James, Jr. *Imputed Negligence and Vicarious Liability: The Study of a Paradox,* 10 U. of Fla.L.Rev. 48 (1957); D. Lessler, *The Proposed Discard of the Doctrine of Imputed Contributory Negligence,* 20 Fordham L.Rev. 156 (1951); 2 F. Harper & F. James, Jr., The Law of Torts, Ch. XXIII at 1264–1283 (1956). The Minnesota Supreme Court in *Weber, supra,* refused to bar recovery to an innocent plaintiff based upon a fiction:

> We can think of nothing more dangerous in these days of congested travel on high-speed highways than to permit a master riding as a passenger in a car driven by his servant constantly to interfere with the servant's driving, or his attempt to exercise a theoretic right of control. To do so would be the clearest evidence of active negligence on the part of the master, for which he would be chargeable without imputing to him the negligence of his servant. Imputed negligence, on the other hand, presupposes that the master is innocent of any fault. How, then, can we reconcile the theory of right to control, the exercise of which would charge the master with negligence and imputed negligence based on the theory that he is free from any fault? The two just do not hang together.

*Id.* at 491, 144 N.W.2d at 545 (footnotes omitted).

The Supreme Court of Pennsylvania in *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970) struck down the former presumption of a master-servant relationship arising from the owner's mere presence in the automobile, holding that the precise nature of the relationship between the owner and the driver was "a question of fact which it is the exclusive function of the jury to determine," *id.* at 418, 269 A.2d at 483, except in cases where reasonable minds could only come to one conclusion. The court abandoned the presumption as illogical.

> We have serious doubt that, in the ordinary situation, the mutual understanding of the owner-passenger and the driver is that the owner-passenger reserves a right to control over the physical details of driving or that the driver consents to submit himself to the control of a "backseat driver." It seems more reasonable that the mutual understanding is that the driver will use care and skill to accomplish a result, retaining control over the manner of operation yet subject to the duty of obedience to the wishes of the owner-passenger as to such things as destination. Such would only constitute an agency relationship and not one of master-servant, although there are undoubtedly situations where the understanding might well be such as to constitute a master-servant relationship [for example, if the driver were inexperienced, or learning, a prospective purchaser or driving under actual direction.]

*Id.* at 416–17 and n. 4, 269 A.2d at 482 and n. 4. [incorporating text of footnote].

The highest court of New York has also rejected the presumption of the owner-passenger's right to control the vehicle. In *Kalechman v. Drew Auto Rental, Inc.,* 33 N.Y.2d 397, 308 N.E.2d 886, 353 N.Y.S.2d 414 (1973), the court completely abrogated the former rule of presumed right to control, finding that the entire doctrine of imputed contributory negligence "is an illegitimate offspring of the vicarious liability concept, which only serves to frustrate the broad policy goals of the parent rule." *Id.* at 403, 308 N.E.2d at 889, 353 N.Y.S.2d at 418. After discussing the public policy behind the general scheme of the tort liability, the court concluded that:

> [T]he general rule should be applied without exception by allowing the plaintiff passenger to recover for negligent opera-

tion of the vehicle—no matter what his relationship to the driver may be—unless it is shown that his own personal negligence contributed to the injury.

*Id.* at 405, 308 N.E.2d at 891, 353 N.Y.S.2d at 420.

The Supreme Court of Tennessee retreated from the doctrine of imputed contributory negligence in *Cole v. Woods,* Tenn., 548 S.W.2d 640 (1977). In a scholarly opinion, the court reviewed the case law in Tennessee and in sister states and concluded:

We have considered and analyzed this matter in the light of the indisputable fact that the laws of every land from time eternal have contained a system of tort law, in one form or another, that recognized the right of the innocent victims of wrongful conduct to recompense at the hands of the wrongdoer. The doctrine of imputed contributory negligence, founded in fallacy and existing without justification, is an impediment to that right and a stumbling block in the path of justice.

The question of a passenger's right to recover should depend solely upon the presence or absence of his own personal contributory negligence.

*Id.* 548 S.W.2d at 650. The court held that only a master-servant relationship or a finding of joint enterprise would justify an imputation of contributory negligence, but noted that the mere presence of the owner in an automobile driven by another does not create any presumption of a master-servant relationship or joint enterprise, stating that in the typical situation, the relationship involved is one of agency only.

The Illinois Supreme Court has held that liability attaches only if the owner-passenger personally is negligent in failing to control the driver. *Bauer v. Johnson,* 79 Ill.2d 324, 38 Ill.Dec. 149, 403 N.E.2d 237 (1980). The court reasoned that "ownership of a car does not necessarily mean control of that car, any more than ownership of any other property necessarily means control of it." *Id.* at 330, 38 Ill.Dec. at 152, 403 N.E.2d at 240 (quoting *Rodgers v. Saxton,* 305 Pa. 479, 485, 158 A. 166, 168 (1932)).

After reviewing these and other cases and authorities dealing with the question, we have determined that the doctrine of imputed contributory negligence should be abandoned in the context of personal injury automobile negligence actions. The rule of *Silva v. Traver, supra,* that mere ownership of a vehicle raises a presumption that the driver is the agent or servant of the owner, lacks any sound justification and is hereby overruled. We hold that the mere presence of the owner in an automobile driven by another does not create any presumption of a master-servant relationship or joint enterprise. The existence of such a relationship must be proved by the party asserting it in the same manner as any other issue in the case.

The judgment of the trial court is reversed, and the case is remanded for a new trial in accordance with the principles set forth in this opinion.

GORDON, V.C.J., and HAYS, J., concur.