953 P.2d 1252

The **STATE** of Arizona, Appellee,

v.

Bart Eugene **NIHISER**, Appellant.

No. 2 CA–CR 97–0070.

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 30, 1997.

Review Denied April 21, 1998.

Grant Woods, the Attorney General by Paul J. McMurdie and Toni Marie Valadez, Phoenix, for Appellee.

Isabel G. Garcia, Pima County Legal Defender by Joy Athena, Tucson, for Appellant.

### *OPINION*

BRAMMER, Judge.

Bart Nihiser was convicted of one count each of aggravated driving under the influence of intoxicating liquor (DUI) and aggravated driving with a blood alcohol concentration of 0.10 or more while his license was suspended, revoked or in violation of a restriction, both class four felonies. A.R.S. §§ 28–692 and 28–697(A)(1). The trial court suspended Nihiser's sentence and placed him on probation for four years. As a condition of probation, the court imposed a mandatory four-month prison sentence. § 28–697(E). Nihiser contends the trial court erred in admitting the results of his blood alcohol concentration (BAC) test and in failing to offset two days of presentence incarceration against his prison time. We affirm the convictions but modify the sentence.

### Facts and Procedural History

■ We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant. *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992). Following Nihiser's arrest for driving under the influence, and after he refused to submit to a breath test, the arresting officers obtained a search warrant to collect a sample of his blood, which they subsequently obtained from him at a local hospital. Nihiser moved to suppress the blood test results because the state had failed to disclose the name and qualifications of the person who had drawn the blood. The court denied the motion, determining that, although § 28–692(F) requires that the individual drawing the blood be "a physician, registered nurse or another qualified person," proof of the person's qualifications is *not* a foundational prerequisite for admitting the BAC test results.

### Suppression of BAC Results

#### A. Vague and ambiguous statute

Nihiser first contends that § 28–692(F) is comprised of two contradictory sentences that render it unconstitutionally vague and ambiguous. The subsection reads as follows:

> If blood is drawn under the provisions of § 28–691, only a physician, a registered nurse or another qualified person may withdraw blood for the purpose of determining the alcohol concentration or drug content therein. The qualifications of the individual withdrawing the blood and the method used to withdraw the blood shall not be foundational prerequisites for the admissibility of any blood alcohol content determination made pursuant to this subsection.

■ Nihiser argues the statute is ambiguous because it first grants the defendant "the right to have blood extracted by someone authorized by law [but then] the right is emasculated with the second sentence because the state need not show its compliance with that right." He claims that the rule of lenity applies, dictating that any doubt as to the statute's meaning be resolved in his favor, citing *State v. Pena,* 140 Ariz. 545, 683 P.2d 744 (App.1983). Accordingly, he argues the trial court was required to declare void the second sentence of the subsection and deny admission of the blood test evidence. Because the legislative intent behind the statute is discernable, we find that the rule of lenity, if otherwise appropriate, is inapplicable in this context. *See id.* at 549, 683 P.2d at 748 (court applied the rule of lenity "absent any expression of legislative intent" as to the meaning of the statute at issue); *see also State v. Ramos,* 155 Ariz. 468, 747 P.2d 629 (App.1987).

■ When construing a statute, our goal "is to fulfill the intent of the legislature that wrote it." *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). In determining legislative intent, we first consider the statute's language because it is "the best and most reliable index of a statute's meaning." *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). When the statute's language is not clear, we determine

legislative intent by reading the statute as a whole, giving meaningful operation to all its provisions, and by considering factors such as the statute's context, language, history, subject matter, effects and consequences, and spirit and purpose. *Wyatt v. Wehmueller*, 167 Ariz. 281, 806 P.2d 870 (1991).

Nihiser interprets the second sentence of § 28–692(F) as nullifying completely the first sentence limiting those who may draw blood for testing. We do not believe the legislature intended to create a statute with no effect or consequence. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964) (courts presume the legislature did not intend to do a futile thing by including a provision that is not operative). Nor do we find that the legislature intended to eliminate all foundational evidence that those who draw blood are within the authorized group described in the statute. Otherwise, it would not have included the first sentence requiring that only physicians, registered nurses, or other qualified persons draw the blood.

■ The logical interpretation of the statute is that the legislature intended evidence to be presented that someone trained in blood withdrawal—a physician, nurse, or other qualified person—actually drew the blood, but does not require evidence of the individual's professional qualifications or credentials or of the method used to withdraw the blood. Hence, if the state presents evidence that a statutorily qualified person drew the defendant's blood, the foundational requirement under the statute is met. Accordingly, we reject Nihiser's claim that § 28–692(F) is unconstitutionally vague and ambiguous, finding that the statute's language clearly evidences the legislative intent that only individuals who have been trained in the practice of blood withdrawal may draw blood for BAC testing. *See State v. Tocco*, 156 Ariz. 116, 119–20, 750 P.2d 874, 877–78 (1988) (court will not declare as void for vagueness every statute it believes "could have been drafted with greater precision"); *Fuenning v. Superior Court*, 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983) ("Due process requires neither perfect notice, absolute precision nor impossible standards.").

### B. Separation of Powers

■ Nihiser next contends that § 28–692(F) violates the separation of powers doctrine because it eliminates foundational safeguards for admitting blood test results, thereby invading the judiciary's evidentiary rule-making authority. The legislature cannot create a statutory rule that "conflict[s with] or . . . tends to engulf a general rule of admissibility" adopted by the court pursuant to its exclusive power to make evidentiary rules. *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984); *see also Barsema v. Susong*, 156 Ariz. 309, 751 P.2d 969 (1988). It can, however, create " 'statutory arrangements which seem reasonable and workable' and which supplement the [supreme court's] rules." *Seidel*, 142 Ariz. at 591, 691 P.2d at 682, *quoting Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). We find § 28–692(F) to be such a statute because the presentation of evidence that a qualified person drew the blood establishes a reasonable and fair presumption that the sample was drawn properly.

The state contends that the qualifications of the person who draws the blood and the method used to draw it are not relevant and are thus inadmissible because they have no tendency to prove the defendant's BAC, an ultimate issue. Ariz.R.Evid. 402, 17A A.R.S. ("Evidence which is not relevant is not admissible."). The state thus concludes there are no foundational prerequisites to consider. We disagree. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. Because the qualifications of, and the method used by, the person drawing the blood have a tendency to show that the blood samples are reliable, they are relevant in authenticating the test results and are thus admissible.

Consequently, if the wording of the statute was so broad as to eliminate entirely all foundation for this evidence, the statute would indeed be unconstitutional. That is not the case here, however, because the proponent of the blood test results must present

evidence that a person described in the statute drew the blood. Once this foundational showing is made, the individual's qualifications and the validity of the method used are presumed.

The trial court reached this same conclusion in denying Nihiser's motion to preclude the BAC test results, finding that "the blood was drawn at a hospital [and] there's a presumption that hospitals are not in the business of allowing unqualified persons to draw blood." We believe common experience supports this presumption.

■ We view presumptions as procedural, rather than evidentiary, concepts. Morris K. Udall et al., *Arizona Law of Evidence* § 143 at 322 (3d ed. 1991). The role of presumptions in the law is not to supplant the rules of evidence, but rather to provide a framework within which evidence is admitted. As is the case here, presumptions based on fact are defined as those in which " 'the basic fact has sufficient value as evidence to support a rational inference as to the presumed fact[s].' " *Id.* § 142 at 321 n. 3, *quoting Silva v. Traver*, 63 Ariz. 364, 373, 162 P.2d 615, 619 (1945), *overruled on other grounds, Reed v. Hinderland*, 135 Ariz. 213, 660 P.2d 464 (1983). The opponent can overcome these presumptions by disproving either the factual basis underlying the presumptions or the existence of the presumed facts. *Id.* § 143 at 322. As such, the presumptions shift the burden of going forward to the party opposing admission, but the burden of persuasion remains on the proponent of the evidence. Both sides are entitled to the presumptions.[1]

■ Given these considerations, once the state establishes a prima facie case for the admission of certain evidence, which is predicated on a reasonable presumption of validity, the law places the onus of challenging the admissibility of such evidence on the defendant. *See State v. Hyde*, 186 Ariz. 252, 921 P.2d 655 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1091, 137 L.Ed.2d 224 (1997) (A defendant must present sufficient evidence to dispel a search or arrest warrant's presumption of regularity); *State ex rel. McDougall v. Superior Court*, 181 Ariz. 202, 888 P.2d 1389 (App.1995) (state need not prove compliance with all Department of Health Services regulations to establish prima facie evidence that a breath test device was in proper operating condition at time test was administered.) In the present context, a defendant has the opportunity to present evidence that the individual who drew the blood was not qualified or the blood was drawn improperly to rebut the statutory presumptions that the samples were drawn by a qualified person in a reliable manner.

■ Having found that the statutory scheme provides an adequate basis for assuring the accuracy and reliability of the blood samples, we conclude that § 28–692(F) does not violate the doctrine of separation of powers because it neither conflicts with nor "tends to engulf" the evidentiary rules pertaining to admissibility, but rather, is a reasonable and workable supplement to the rules. *See State v. Leonard*, 151 Ariz. 1, 725 P.2d 493 (App.1986) (statutory amendment reducing foundational requirements necessary to admit results of breath test does not conflict with rules of evidence).[2]

■ Nor do we find that the court erred in ruling that the state complied with the statute's foundational requirements in this case. The first police officer stated that the person who drew the blood sample was a member of the hospital staff. The second officer testified that the person had told him he was a doctor and the person's name tag identified him as a doctor. The second officer also testified that he had provided the

---

1. Hence, if appellant had his blood drawn and analyzed independently, he likewise would be entitled to the statutory presumption that the blood samples were drawn correctly upon a showing that a person described in the statute drew the blood.

2. *See also State v. Irving*, 165 Ariz. 219, 797 P.2d 1237 (App.1990) (statute providing for self-authentication of Arizona Department of Transpor-

tation records construed to supplement rules of evidence and to provide reasonable and workable method of introducing motor-vehicle records about defendants); *Seidel* (statutory method of introducing evidence of breath test analysis, which allows admission of the evidence without expert testimony, is an alternative to admission under the rules of evidence).

equipment used in the blood draw, including a "betadine swipe solution," from a sealed kit that he brought for this purpose. Nihiser did not contest this evidence nor did he offer any evidence impugning the qualifications of the medical professional who drew the blood or the quality of the blood samples. Consequently, we find that proper foundation was laid pursuant to § 28–692(F), and the trial court did not err in admitting the BAC test results.

## C. Equal Protection

■ Nihiser next contends that the Arizona statutes violate his state and federal equal protection rights because they impermissibly create two standards for DUI offenders. He argues that those whose BAC is determined through blood collection fail to receive the same foundational protections as those whose BAC is determined through breath collection. Specifically, "those whose breath is collected under § 28–695(A) are granted foundation as to the collector's qualification[s], and those whose blood is collected under § 28–692(F) are not granted foundation as to the collector's qualifications."

Section 28–695(A)(2) requires the proponent of breath test results to provide evidence that the individual collecting the breath samples is certified. Having found that § 28–692(F) also requires the proponent of the blood test results to provide evidence that a qualified person drew the blood, we find no disparate treatment with respect to those whose breath is collected versus those whose blood is collected. Consequently, we do not agree with appellant that the statute has created two standards for DUI offenders, and we find no equal protection violation.

### Presentence Incarceration Credit

■ The trial court sentenced Nihiser to four months in prison as a condition of probation as required by § 28–697(E) for persons convicted of aggravated driving under the influence. The court gave no credit for the two days Nihiser spent in custody prior to sentencing, which Nihiser contends was error. Although Nihiser has already served his four-month prison term, we find that the issue is not moot because our decision will affect him should he face further incarceration if his probation should be revoked.

We agree that Nihiser is entitled to a credit for his two days of presentence custody. State v. Mathieu, 165 Ariz. 20, 795 P.2d 1303 (App.1990) (defendants convicted of felony DUI who receive a mandatory prison term as a condition of probation are statutorily entitled to credit against that term for time spent in presentence incarceration). Although the state urges us to follow State v. Brodie, 127 Ariz. 150, 618 P.2d 644 (App. 1980), we decline to do so because that case is distinguishable from both Mathieu and the present case. Brodie held that persons who receive mandatory jail time as a condition of probation are not statutorily entitled to credit for their time spent in presentence incarceration. While acknowledging Brodie's holding in the context of probationary jail time, the Mathieu court found that defendants who receive mandatory probationary prison time are entitled to a credit pursuant to A.R.S. § 13–709(B).[3] Because Nihiser was sentenced to prison rather than jail, Mathieu controls. Nihiser is entitled to a credit for his two days of presentence custody should future incarceration be considered.

We affirm the convictions and modify the sentence.

FLOREZ, J., concurs.

DRUKE, Chief Judge, specially concurring.

I concur, but write separately on the two days' presentence incarceration credit. When a trial court grants probation to a defendant, such as appellant, who has been convicted of violating A.R.S. § 28–697(A)(1), subsection E of the statute requires the court to impose a prison sentence of "not less than four months" as a condition of probation. The court thwarts this legislatively mandated minimum prison sentence if it must, as Mathieu holds, then give the defendant credit for

3. Mathieu "[left] for another day the reexamination [of Brodie as to] whether [credit should be given for] incarceration in the county jail as a condition of probation." 165 Ariz. at 25 n. 3, 795 P.2d at 1308 n. 3.

presentence incarceration. Indeed, the legislative mandate could be nullified if the defendant's presentence incarceration exceeded four months. Of course, the trial court could avoid this result by increasing the mandated minimum prison sentence by the number of days of presentence incarceration. Here, for example, the court could have imposed a prison sentence of four months and two days. The court could also avoid the result by imposing a jail sentence as an additional condition of probation under § 13–901(F) and crediting the presentence incarceration against the jail sentence. *See State v. Schumann*, 173 Ariz. 642, 845 P.2d 1137 (App. 1993).

For these reasons, I find *Mathieu* unpersuasive and would adopt a rule that would require a trial court to credit the defendant with presentence incarceration under but three circumstances. First, the court must give credit if it sentences the defendant to prison rather than placing the defendant on probation. *State v. Williams*, 128 Ariz. 415, 626 P.2d 145 (App.1981). Second, if the court places the defendant on probation, it must give credit if it collectively imposes, at any time during the probationary period, the maximum period of incarceration (prison and/or jail) permitted as a condition of probation. In this instance, that maximum would be one year under §§ 13–901(F) and 28–697(I)(1). Third, if the court places the defendant on probation, it must give credit if it later revokes probation and sentences the defendant to prison. *State v. Wietholter*, 130 Ariz. 323, 636 P.2d 101 (1981). *Cf.* § 28–697(J) (if probation revoked, no credit given for incarceration pursuant to subsection I).

Accordingly, I concur with the result in this case because the majority does not now order the trial court to give the defendant two days' presentence incarceration credit against the four month prison sentence imposed as a condition of probation pursuant to § 28–697(E). In my opinion, the court must give the two-day credit only if either circumstance two or three arises in the future.